[Crim. No. 1.   Third Appellate District.—May 24, 1905.]

# THE PEOPLE, Respondent, v. JAMES McROBERTS, Appellant.

CRIMINAL LAW—MURDER—MISCONDUCT OF DISTRICT ATTORNEY IN ARGUMENT.—It was not misconduct for the district attorney in his argument to the jury to refer to a knife found in the possession of the deceased to rebut any inference that defendant's counsel may have drawn from the fact that it was not introduced in evidence; nor to urge that the evidence was conclusive of defendant's guilt. But it was unwarranted license to refer to the criminal history of the county, and to avow his belief in the efficacy of mob law, and to say that it would have been a good thing for the county if the defendant had been lynched; though such misconduct was not prejudicial or ground for reversal where the homicide was admitted, and the evidence makes it reasonably certain that the jury were not led by the misconduct of the district attorney to return a verdict which they otherwise would not have found.

ID.—INSTRUCTIONS—CRIMINAL INTENT TO BE GATHERED FROM CIRCUMSTANCES—ILLUSTRATION NOT MISLEADING.—An instruction correctly

stating the law, that in order to constitute the crime of murder there must exist a union or joint operation of the act and intent or criminal negligence, is not argumentative or misleading because it illustrates the impossibility of looking into or photographing or determining the workings of the human mind, and shows the necessity of gathering the intention with which the act was done from all the circumstances surrounding it.

ID.—DEFINITION OF MURDER—"MALICE"—An instruction defining murder substantially in accordance with section 188 of the Penal Code, and stating that legal "malice" may exist where there is no spite or hatred or ill-will, and that an unlawful act done intentionally and without just cause or excuse is an act in contemplation of the law done with "malice," as that word is understood in criminal judicature, is not subject to criticism.

ID.—INSTRUCTION AS TO MANSLAUGHTER—REASONABLE DOUBT NOT REPEATED.—Where the court instructed the jury fully upon the question of reasonable doubt, it was not necessary that an instruction defining manslaughter and telling the jury that "the defendant may, if in your judgment the facts warrant it, be convicted of manslaughter" should expressly repeat the subject of reasonable doubt.

ID.—INSTRUCTION CONSTRUED.—Where the court had defined the two degrees of murder, a following instruction, beginning "From these definitions the jury will see," does not leave the jury in doubt as to what previous definitions were referred to.

APPEAL from a judgment of the Superior Court of Yolo County and from an order denying a new trial. E. E. Gaddis, Judge.

The facts are stated in the opinion of the court.

Charles W. Thomas, for Appellant.

U. S. Webb, Attorney-General, for Respondent.

CHIPMAN, P. J.—Defendant was tried on an information charging him with the murder of one John Murphy and was convicted of murder in the second degree. Defendant appeals from the judgment.

There is no claim made that the evidence was insufficient to justify the verdict. The grounds of appeal urged in defendant's brief are misconduct of the district attorney in his address to the jury, and that certain instructions given the jury by the court were erroneous statements of the law and prejudicial to defendant.

1. The district attorney, apparently in reply to some comments of defendant's attorney during his address to the jury concerning a knife said to have been found in the possession of the deceased, and which the prosecution identified as belonging to deceased but did not offer in evidence, remarked: "This county has paid to have the knife examined and if he [defendant] wants that evidence he can have it." Upon objection of defendant's attorney, the court said: "Let that be stricken out, the statement 'This county has paid to have the knife examined,' etc."

And again: "As I was going to say, if they had said that Mr. Murphy cut him, then it would have been proper to have introduced the knife, and if there was blood upon it it would be evidence in their favor." Remarking upon the duty of the jury in the light of the evidence, claimed by him to be conclusive of defendant's guilt, the district attorney said that the community ask only simple justice, and added: "This has usually been denied, judging from the past criminal history of this county. One hundred and ten murders have been committed and but one hung."

Again: "Murder flourishes freely; within the past six months two men have come into this county, strangers, and have committed murders." The district attorney then called attention to what he claimed was the fact,—that it made but little difference what crime was committed "there is always some defense manufactured to save the culprit's neck," continuing in like language to some extent, and concluding: "If the people of Dunnigan had taken him [referring to defendant] out that day and strung him to a tree, they would have done a good thing for this community, and taught these red-handed devils that there is such a thing as law and punishment for their deeds."

It is claimed to be prejudicial error for the district attorney "against objection to state facts pertinent to the issue and not in evidence, or to assume *arguendo* such facts to be in the case when they are not." It was so held in *People v. Mitchell,* 62 Cal. 411, and *People v. Ah Len,* 92 Cal. 282,[1] [28 Pac. 286], and perhaps other cases. We cannot see that the remarks of the district attorney respecting the knife referred to were in violation of this rule. He was simply rebut-

---

[1] 27 Am. St. Rep. 103.

ting any inference that the defendant's counsel may have drawn from the fact that the knife was not introduced in evidence. There was no claim made that the knife proved anything one way or the other. If there was any inference it would be under the rule favorable to the defendant. Moreover, defendant could have introduced the knife if its presence would have helped his case.

Nor was there any overstepping the limitations of duty to urge that the evidence was conclusive of defendant's guilt, as this was but a conclusion of the district attorney drawn by him from the evidence before the jury. It was, however, unwarranted license to refer as he did to the past criminal history of the county, and it was gross and reprehensible violation of duty to avow his belief in the efficacy of mob law and to say, as he did, that the lynching of defendant by the people of Dunnigan would have been a good thing for the community. There were no facts or circumstances disclosed by the evidence which would have justified such an expression of opinion even from one having little regard for the rights and duties of the public, but there was no conceivable excuse, much less justification, for a sworn officer of the law to indulge in utterances which if put into execution would be subversive of all the safeguards of the law thrown around the citizen. No allowance for the zeal, which rightly exercised by a district attorney is commendable, can condone so flagrant a burst of unrestrained passion.

While this is true, the question remains, Should the judgment of conviction be set aside for this misconduct? We must assume that the jury was composed of men possessing ordinary intelligence and as having at least ordinary regard for their oaths as jurymen. The ordinary or average American citizen is not under ordinary circumstances influenced by appeals to mob law. The provocation must be great and the exigency pressing to impel him to countenance or yield to such appeals. In the present case the homicide was admitted, and the evidence was such as to make it reasonably certain that the jury was not led by the misconduct of the district attorney to return a verdict which they otherwise would not have found. The question now before us is not the instance of attempt to argue from pertinent facts not in evidence, nor the other case, so often condemned by the courts, of seeking

to get before the jury prejudicial facts not pertinent or relevant, by persistently stating and offering to prove them, which was the case in *People* v. *Lee Chuck,* 78 Cal. 317, 329, [20 Pac. 719], cited by defendant. As to the remarks of the district attorney about the frequency of crime and the failure to punish it, see *People* v. *Molina,* 126 Cal. 505, [59 Pac. 34], where such comments were held not prejudicial error.

2. The court in its instruction marked II correctly stated the law that there must exist a union or joint operation of act and intent or criminal negligence. The court explained that it was not possible "to look into the mind of a man and see what its workings are; we cannot bring a photograph of the mind of a man and exhibit to you so as to determine clearly and absolutely what the workings of a human being's mind are. Hence from necessity the law says that you shall gather the intention with which the act was done from all the circumstances surrounding," etc.

This instruction was not, we think, either argumentative, misleading, or suggestive, as claimed by defendant. The illustration used by the court made the instruction more lucid and easier of comprehension by the jury.

Instruction IV (erroneously referred to as VI in defendant's brief) defines murder, following substantially the definition given in section 188 of the Penal Code. The court also stated that the word "malice" does not necessarily mean that the accused must have entertained toward the deceased feelings of spite, hatred, or ill-will, but that the word "malice" meant more under the statute, and the court said that there may be legal malice where there is no spite or hatred or ill-will, and explained that an unlawful act done intentionally and without just cause or excuse is an act in the contemplation of the law done with malice as that word is understood in criminal judicature. We see no ground for criticism of this instruction.

Instruction No. V is a correct definition of murder. The court added, "Under the information in this case, as aforesaid, the defendant may, if in your judgment the facts warrant it, be convicted of manslaughter." The court then proceeded to define manslaughter correctly. It is claimed that the instruction "excludes the principles of reasonable doubt." The court instructed the jury very fully as to the doctrine of

reasonable doubt. It was not necessary to repeat this doctrine in every instruction. In using the language "if in your judgment the facts warrant it" the jury must have understood from the very explicit instructions on the subject that they could find no verdict except convinced by the evidence beyond a reasonable doubt.

Instruction numbered XI was given in *People* v. *Iams,* 57 Cal. 115, 117, except the latter part, the omission of which does not affect or change the substance of the instruction. It is complained that the beginning of the instruction—"From these definitions the jury will see," etc.—left the jury in doubt as to what previous instructions or definitions were referred to, citing *People* v. *Valencia,* 43 Cal. 552. It is obvious that no others could have been referred to, except such as defined murder in its two degrees.

The point decided in the case cited was, that where on a trial for murder two parts of the charge of the court to the jury as to what constitutes murder are contradictory, and one is correct and the other is erroneous, the judgment of conviction will be reversed.

No such condition of the instructions exists here.

The judgment is affirmed.

Buckles, J., and McLaughlin, J., concurred.

A petition to have this cause heard in the supreme court after judgment in the district court of appeal was denied by the supreme court on July 21, 1905.