[Crim. No. 279.  Third Appellate District.—February 20, 1915.]

## THE PEOPLE, Respondent, v. C. E. CLAYBERG, Appellant.

CRIMINAL LAW—RAPE—FEMALE UNDER AGE OF CONSENT—INFORMATION —USE OF FORCE AND VIOLENCE.—An information charging the commission of the crime of rape upon a female under the age of eighteen years is sufficient without an allegation that the act was commmitted by a resort to force and violence.

ID.—FILING OF NEW INFORMATION—POWER OF COURT.—Where after the filing of an information charging the commission of the crime of rape upon a female under the age of eighteen years, the district attorney upon his own initiative and without any order of court files a second information charging the defendant with resorting to force and violence in the commission of such act, and such information is thereafter set aside upon the ground that it exceeded the scope of the commitment, the court has authority in making such order to direct the filing of a third information without a re-examination of the charge, as there is nothing in the provisions of section 997 of the Penal Code which provides that the procedure as to the filing of a new information can be resorted to but once in any one case.

ID.—OPENING STATEMENT OF DISTRICT ATTORNEY—MANNER OF COMMISSION OF CRIME—PROPER DECLARATION.—In a prosecution for rape upon a female under the age of legal consent, it is not prejudicial misconduct for the district attorney to declare in his opening statement to the jury that he will prove certain acts of actual force and violence on the part of the defendant in the accomplishment of the act, as such prosecuting officer has the right to show the circumstances under which the crime was committed.

ID.—ARGUMENT TO JURY—IMPROPER REFERENCE TO SIMILAR OFFENSE— CONDUCT NOT PREJUDICIAL.—Misconduct on the part of the district attorney in his argument to the jury in making reference to an assault of the same general character as that charged against the defendant, which was made by another party upon another female on a previous occasion in the same county, and calling attention to the fact that the assailant "is now doing time in San Quentin for that crime," is not prejudicial, where such remarks are withdrawn upon objection made, and the jury promptly instructed to disregard the same.

ID.—FIXING OF PUNISHMENT BY JURY—PROPER REFUSAL OF REQUESTED INSTRUCTION.—An instruction requested by the defendant explaining the law as it is declared in section 264, and subdivision 1 of section 261 of the Penal Code relating to the power vested in juries to determine the nature and extent of the punishment where the prosecu-

tion is based upon such subdivision of the latter section, and declaring that it was their duty to consider all the circumstances of the case with a view to a just determination of which mode of punishment authorized by said section 261 "will best conserve the interest of society and the interest of the defendant," and that the policy of the law is opposed to the infliction of "unusual or severe punishment," is properly refused.

ID.—SUFFICIENCY OF EVIDENCE.—It is held in this case that the evidence was amply sufficient to sustain a verdict of conviction.

APPEAL from a judgment of the Superior Court of Humboldt County and from an order denying a new trial. Clifton H. Connick, Judge.

The facts are stated in the opinion of the court.

E. M. Frost, and Coonan & Kehoe, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was charged by an information, filed in the superior court of Humboldt County, with the crime of rape, alleged to have been committed on the twenty-ninth day of May, 1914, upon the person of one Garland White, a female. Upon said information the defendant was duly tried, and a verdict of guilty of the offense so charged was returned by the jury.

The defendant moved for a new trial, which was denied, and from the judgment and the order denying said motion he presents these appeals.

The first point made by the defendant is that the district attorney was without authority to file a new or, as he calls it, "an amended" information, after a second information, substituted for the original filed by the district attorney, had been set aside on motion.

It appears that by the complaint filed in the magistrate's court, and which constituted the foundation of the preliminary hearing of the charge against the defendant, the latter was accused of statutory rape—that is to say, he was thus accused of criminally violating the person of the prosecutrix, "then and there under the age of eighteen years, to wit: of the age of seventeen years," the element of force not being therein alleged. Upon the conclusion of the preliminary ex-

amination of the charge, the magistrate indorsed on said complaint an order committing the defendant to trial in the following language: "It appearing to me that the offense of rape as herein set forth has been committed, and that there is sufficient cause to believe the within named C. E. Clayberg guilty thereof, I order that he be held to answer the same."

Within due time after the commitment of the accused, the district attorney filed an information in the superior court charging the defendant with the crime as it was stated in the complaint filed before the magistrate and the order of commitment. Thereafter, upon his own initiative or without an order or authority from the court so to do, the district attorney filed in the place of the original a new information charging the defendant with the crime for which he had been committed, but therein alleged, in addition to the statement that the prosecutrix was under the age of legal consent in such cases, that the act of sexual intercourse so charged was accomplished by the defendant by a resort to force and violence, "and without the consent and against the will of the said Garland White," and that she "resisted the accomplishment of said act of sexual intercourse, but her resistance was then overcome by force and violence upon" her by said defendant, etc.

The defendant demurred to the information as so filed and the demurrer was overruled, and thereupon he filed and the court granted a motion to set said pleading aside upon the ground that, before the filing thereof, the defendant had not been legally committed by a magistrate. (Pen. Code, sec. 995.) In granting said motion, the court ordered "that a new information be filed herein against said defendant by the district attorney of the county of Humboldt, state of California," and thereupon that officer filed another information whose allegations conform to the charge as it was stated in the complaint and the magistrate's commitment of the defendant for trial.

The information set aside by the court charged the offense for which the defendant was committed, and its allegations that force and violence were employed by the accused in the perpetration of the crime of rape were mere surplusage. The crime as described in the commitment or the depositions upon which the commitment was founded was also alleged. In our

opinion, the motion to set aside the information should have been disallowed.

However, we shall, in considering the argument against the action of the court in allowing another information to be filed by the district attorney, assume that the information set aside was defective in that it exceeded the scope of the commitment in stating the offense for which the accused was held, or, in other words, in practical effect, the information did not state the precise crime for which the accused was committed.

Counsel for the defendant refer to the information upon which the defendant was tried as "an amendment to an amended information" and assert that there is no warrant of law for amending an information which is itself an amendment of the one previously filed. But the information last filed in this case was not an amendment of the information previously filed. Amendments of indictments or informations may be made by authority alone of section 1008 of the Penal Code, as amended by the legislature of 1911. (Stats. 1911, p. 436.) That section expressly authorizes the amendment of an indictment or information in certain indicated particulars. The information upon which the defendant was tried, however, was the information which the district attorney may file, in lieu of one set aside on motion, upon an order by the court directing him to adopt that course, and is the result of a proceeding authorized by section 997 of the Penal Code.

That section provides that, if the motion to set aside the indictment or information is granted, "the court must order that the defendant, if in custody, be discharged therefrom; . . . unless it directs that the case be resubmitted to the same or another grand jury, *or that an information be filed* by the district attorney; provided, that after such order of resubmission the defendant may be examined before a magistrate, and discharged or committed by him, as in other cases, if before indictment or information filed he has not been examined and committed by a magistrate."

There can be no doubt that where it is made to appear that an information as filed by the district attorney has gone beyond the scope of the magistrate's commitment or charges an offense different from that for which the accused has been committed by the magistrate and the superior court for that reason sets it aside, as in such case it would be its duty to do, said court, by the power vested in it by said section of the

Penal Code, may authorize, by a proper order, the district attorney to file another information upon and conformably to the commitment as made by the magistrate upon the preliminary hearing of the charge. (*People* v. *Lane,* 101 Cal. 513, [36 Pac. 16] ; *Carpenter* v. *Nutter,* 127 Cal. 61, 64, [59 Pac. 301] ; *Ex parte Fowler,* 5 Cal. App. 549, [90 Pac. 958].) This is as it should be. The commitment is based upon testimony taken at the hearing, and, where an information has been set aside upon the ground that it does not charge the offense for which the accused has been committed, and the court thereupon directs, by a proper order, that another information be filed on such commitment, there is no conceivable reason calling for a re-examination of the same charge, thus necessitating the retaking of testimony once heard, where the commitment, founded upon such testimony, discloses that an offense of which the superior court has jurisdiction has been committed and that there is reasonable ground arising from the testimony so taken for committing the accused for trial upon the charge. Indeed, a document purporting to be an information founded on a commitment by a magistrate and which charges a different offense from that for which the accused has been so committed, is, in point of law, the same as no information at all in that case, and hence it was with much wisdom, indeed, that the legislature authorized, in such circumstances, a procedure for the filing of a proper information which would obviate the necessity of repeating a proceeding which, having once been had, could accomplish no useful purpose either to the defendant or to the people. Section 997, as so construed, can certainly work no prejudice to the rights of the accused, and harmonizes with the spirit and central purpose of the reformed procedure.

But counsel seem to lay particular stress upon the proposition that the court allowed the district attorney to file three informations in this case, two having been set aside, contending that, even if section 997 contemplates that an information may at all be filed in the place of one set aside on motion, without a re-examination of the charge, said section is to be so construed as to limit the right of the court to direct it to be done and of the district attorney to file it under such direction to one time only in a single case. In other words, the contention appears to be that the procedure authorized by said section as to the filing of another information upon the setting

aside of one previously filed may be resorted to but once in any one case, and that before a second information can legally be filed, two previous ones having been set aside, there must be another preliminary examination of the charge before a magistrate. The language of the section does not support that contention. We can see no reason why the same procedure may not be invoked more than once in any one case, where the district attorney fails to charge in any information he may file in such case the crime for which the accused has been committed and it appears that an information can be filed stating such offense.

The next assignment involves the complaint that, in declaring to the jury in his opening statement that he would prove certain acts of actual force and violence on the part of the defendant in the accomplishment of the act of sexual intercourse with the prosecutrix, the district attorney went beyond the issues tendered by the information, inasmuch as the element of actual force was not of the essence of the crime as charged. But, while it is true that the crime as set forth in the information was not of that character to require the proof of force to establish its consummation, the district attorney nevertheless had the right to show the circumstances under which the crime was committed and to state to the jury his ' intention and ability to prove those circumstances, and if, perchance, they developed some element not essential to the consummation of the crime as charged, the defendant cannot complain, so long as they related to the transaction or act directly resulting in the consummation of the crime. In so-called statutory rape, actual force is not an element, but therein the law supplies the element of force by declaring that a sexual act with a female not the wife of the seducer and under a certain age is against her consent and, therefore, a crime. In such a case, in other words, force is implied, and proof of actual force in the commission of the crime of statutory rape can make it none the more a crime than if that element were absent.

The prosecutrix, in detailing the circumstances under which the defendant met and assaulted her, testified that he used actual force upon her; that he forcibly dragged her to the spot where the act was perpetrated, and that he gagged and administered chloroform to her and then violated her person. Thus the district attorney not only, with eminent propriety,

showed how the act to the execution of which the prosecutrix could not in law consent was committed, but made good his promise to the jury that he would prove that the act was committed under the circumstances as outlined by him in his opening statement.

Again, it is urged that the district attorney was guilty of misconduct seriously violating the substantial rights of the defendant by referring, in his argument of the case to the jury, to an assault of the same general character as that charged against the defendant which was made by another party upon another female on a previous occasion, in Humboldt County, and calling attention to the fact that the assailant "is now doing time in San Quentin for that crime."

The district attorney obviously had no right to refer to other cases having no connection whatever with the present case, in his argument to the jury, and this proposition the trial judge in this case readily recognized, for, upon objection by the attorney for the defendant, the court promptly stopped the prosecutor from further reference to the case mentioned by him and instructed the jury to disregard that part of the argument "and not to be influenced by it in any respect." The district attorney thereupon also said: "I will withdraw that part of my argument and consent that it be stricken out."

The prompt and emphatic admonition by the court to the jury to disregard and not to be governed by the objectionable remarks of the district attorney were no doubt obeyed by the jury. At any rate, we must so presume and that whatever damaging effect said remarks might otherwise have had upon the rights of the accused was overcome by the timely instruction of the court to disregard them. (*People* v. *Northey,* 77 Cal. 618, [19 Pac. 865, 20 Pac. 129]; *People* v. *Molina,* 126 Cal. 507, [59 Pac. 34[; *People* v. *Prather,* 134 Cal. 439, [66 Pac. 589]; *People* v. *McRoberts,* 1 Cal. App. 28, [81 Pac. 734]; *People* v. *Burke,* 18 Cal. App. 72, [122 Pac. 435].)

It is next insisted that the court, erroneously and to the prejudice of the defendant, disallowed instruction "V," as proposed by him. Said instruction related to the power vested in juries by section 264 of the Penal Code (Stats. 1913, p. 212) in cases arising under subdivision 1 of section 261 of said code, to determine, practically, the nature and extent of the punishment which may be inflicted. By the terms of the former section, it is incumbent upon the jury, where the prosecution

is based upon subdivision 1 of section 261, to determine whether the defendant, if convicted, shall be punished by imprisonment in the county jail or the state prison. The rejected instruction explained the law as it is declared in those sections of the code, and proceeded to declare that it was the duty of the jury to consider all the circumstances of the present case with a view to a just determination of which mode of punishment authorized by said section 261 "will best conserve the interest of society and the interest of the defendant," in the event that they found the defendant guilty. The instruction also had something to say about the policy of the law being opposed to the infliction of "unusual or severe punishment," etc., which statement could have no just place in the court's charge, it being argumentative in character.

The instruction was properly refused. The court, in its charge, told the jury of the power and duty resting upon them by virtue of the provisions of section 264 of the Penal Code in the matter of designating the prison in which the defendant should be incarcerated in case of his conviction of the crime charged (the crime charged here being based on subdivision 1 of said section 261), and the jury, heeding that instruction, by their verdict, designated the state prison as the place of punishment. The court, furthermore, very clearly explained to the jury their general duty as such and told them that a verdict of conviction could be reached only upon their being convinced, after a fair and impartial consideration of all the evidence, of the guilt of the accused beyond a reasonable doubt.

The last point made by the defendant calling for special notice is that the verdict is devoid of sufficient support; but this claim is wholly without merit, as an examination of the evidence will readily disclose.

The crime was committed at about the hour of 9 o'clock on the evening of May 29, 1914. The prosecutrix, at the time of the assault upon her, was under the age of 18 years, having been born in the month of November, 1896. She testified that, at about the hour named, while she was on the way from her home to a grocery store and while walking over a path which passes through a large park, in the city of Eureka, known as "Sequoia Park," she saw a man (who turned out to be the defendant) coming toward her. "As he got up to me," she continued, "he flashed a light in my face, and I turned

to run and he grabbed me. I beat him and he got me down and held me, and chloroformed me, and when I came to he was dragging me out in the road by the park, and dragged me quite a ways, and whenever I did anything he put the chloroform to my nose and took me over by the park over beyond the road going through the park. . . . He tied a handkerchief over my mouth and put a gag in my mouth to keep me from hallooing. That was after he dragged me and in the road quite a ways, and dragged me off the county road. . . . He said if I would not go he would make me go. . . . He took me over the stile and around next to the fence. He did not take me down the road but a little ways, then he took off and left the road, the county road, and took me into the woods." She proceeded to say that he finally forced her to a lonely spot in the woods, a considerable distance from the road, made her lie down upon the ground and then had sexual relations with her. After the defendant had finished his relations with the girl, she returned to her home, reaching there at about a quarter to 11 o'clock. She thereupon immediately made complaint to her mother of the treatment she had received at the hands of the defendant.

The mother of the prosecutrix testified that the latter arrived at her home at about 11 o'clock on the night of May 29, 1914; that the young woman's hair was nearly torn from her head, "and she was dirt all over; her shoes were full of dirt, and she seemed to be just wrecked all over; . . . there was not a hair pin left in her hair; her teeth were chattering like she had the worst chill that could be; . . . she was nervous and excited; . . . she made complaint to me that something had happened to her; . . . I examined her underclothing; . . . they were badly soiled; . . . I detected strong odor of chloroform; . . . I am familiar with the odor of chloroform; . . . I followed nursing for ten years; . . . her lips were scorched all across here (showing) ; . . . I picked her up off the floor where she fell beside my bedside and she told me what had happened; . . . she was in such a bad condition, so weak in her excitement, that I went and helped her get to bed; . . . she had a chill—a nervous chill—after I put her to bed; . . . I telephoned to the police that night; her and I went to the telephone together, just across the yard to Mrs. Walker's; . . . she herself (the prosecutrix) gave (to the police) a descrip-

tion of the man; . . . Mrs. Walker was present when we telephoned to the police.''

The witness, Snodgrass, was confined in the city jail of Eureka a short while after the defendant's arrest, and there he met and conversed with the latter, with whom he was acquainted, and who, while not admitting that he had sexual relations with the prosecutrix, said to the witness that he had met her on the night of the assault. The defendant requested the witness to go to his (defendant's) room, in the Brooklyn House, and secure and destroy some bottles containing chloroform which were in said room. The witness went to the room as requested and searched for the bottles, but was unable to find them. Later the defendant gave the witness a more specific description of the place in the room where the bottles were situated and, on returning to the room, accompanied by an officer, and again looking for the bottles, found them, the officer then being present. They contained chloroform.

The chief of police of Eureka testified that, upon searching the room of the defendant, shortly after the latter's arrest, he found a search-light. The chief also testified that he was with and saw the witness Snodgrass locate the bottles of chloroform which the latter found in the defendant's room.

C. L. Koker testified that, after the arrest of the defendant, he held a conversation with him in the county jail; that the accused admitted in said conversation that he met the prosecutrix in the dark and flashed the light on her. Subsequently, in another conversation, the defendant remarked to the witness that ''if the chloroform was found it was all off with him, and if the chloroform was not found, he had a chance.''

The witness Lee testified that the defendant admitted to him that he had had sexual intercourse with the prosecutrix. He further admitted to the witness that he had sent Snodgrass to his (defendant's) room to get and dispose of the chloroform, and requested Lee to find out whether Snodgrass had done as he (defendant) had directed him to do. Lee further said that defendant requested him to ''try and get this girl to go for a ride with me, and get a confession from her that she was over eighteen years old.''

Thus, in substance, we have presented the testimony which stands as the support to the verdict, and that it is ample support there is no substantial reason for doubting. It appears to be true and, indeed, it may be conceded, that the story of

the prosecutrix is characterized by some inconsistencies or contradictions. These, however, bear particularly upon the question whether the defendant employed force in the perpetration of the crime. But, the prosecutrix being under the age of consent, it is manifestly immaterial whether the defendant used force in the accomplishment of the act or not. The mere act of having sexual relation with a female under the age of legal consent itself constitutes the crime charged and it still remains a crime even though it be shown that the female actually consented to the act. Besides, contradictions arising in the testimony of a witness constitute considerations with which appellate courts cannot concern themselves unless it clearly appears that such contradictions impart to the whole story of the witness such inherent infirmities as will render the entire material portions of his testimony palpably improbable or unbelievable.

Some of the rulings of the court upon the evidence are criticised, but we have found nothing in the few assignments under this head which calls for special consideration.

The judgment and the order are affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 19, 1915.