[Crim. No. 337.   Third Appellate District.—February 9, 1916.]

# THE PEOPLE, Respondent, v. DENTON CHOBER (True Name Antonio Chavez), Appellant.

CRIMINAL LAW—AMENDMENT OF INFORMATION AFTER PLEA—CONFORM-
ANCE TO COMMITMENT—STATEMENT OF LESSER OFFENSE—LACK OF
PREJUDICE.—In a criminal action it is not prejudicial to the sub-
stantial rights of the defendant to allow the district attorney, after
the defendant has entered his plea of not guilty to the information,
to amend the information to make it conform to the commitment
by the magistrate, where the crime charged under the amendment
is included within the crime charged in the original information.

ID.—AMENDMENT OF INFORMATION AFTER PLEA—MOTION TO SET ASIDE
UNAUTHORIZED.—A new or amended information cannot be set aside
on the ground that an information cannot be amended at any time
after the defendant has pleaded thereto, as such ground is not .
among those enumerated in section 995 of the Penal Code, which
expressly prescribes and limits the grounds of such a motion.

ID. — VERDICT UPON CONFLICTING EVIDENCE — RULE. — If the evidence
which bears against a defendant, considered by itself, and without
regard to conflicting evidence, is sufficient to support the verdict,
the question ceases to be one of law—of which alone the appellate
court has jurisdiction—and becomes one of fact upon which the
decision of the jury and the trial court is final and conclusive.

ID.—INSTRUCTIONS—SELF-DEFENSE.—It is not error to refuse to give to
the jury a number of instructions proposed by the defendant con-
taining a statement of the law of self-defense, where the court gave
in substance and effect all that was contained in such proposed
instructions.

APPEAL from a judgment of the Superior Court of San
Joaquin County, and from an order denying a new trial.
C. W. Norton, Judge.

The facts are stated in the opinion of the court.

A. H. Carpenter, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was convicted in the superior court of the county of San Joaquin of the crime of an assault with a deadly weapon. He appeals from the judgment and the order denying his motion for a new trial.

The first assignment of error involves the action of the court in allowing the district attorney to amend the information after the defendant had entered a plea of not guilty to the information as originally filed.

The reason for the allowance of the amendment was that the original information did not conform to the commitment by the magistrate, in that it charged a different offense from that for which the defendant was committed.

It appears that the defendant was charged in the complaint filed with the magistrate with the crime of assault to commit murder. The commitment recited that the defendant was charged with the crime of assault to commit murder, and that it appeared that the "offense above mentioned has been committed, to wit, assault with a deadly weapon," etc. Upon this commitment, the district attorney filed an information charging the defendant with the crime of assault with the intent to commit murder. After his arraignment upon and plea to the information as so filed, and on the day upon which the case was called for trial, which was several months after his arraignment and plea, the district attorney, calling the court's attention to the commitment and declaring that he construed it as an order holding the defendant to trial for the lesser offense of assault with a deadly weapon, asked leave to amend the information so that it would charge the latter offense. The court, over objection by counsel for the defendant, granted the motion, and the information was amended accordingly. The defendant's attorney thereafter moved to set aside the information as so amended on the ground that an information cannot be amended after the defendant has entered his plea thereto.

The commitment is somewhat ambiguous as to the crime for which the magistrate intended to hold the defendant to trial, but we agree with the district attorney that, properly

construed, the commitment was for an assault with a deadly weapon.

Section 997 of the Penal Code authorizes the court to order a new information to be filed in lieu of one previously filed where the latter or the original information is set aside on any of the grounds specified in section 995 of said code. This section (997) applies where, before the filing of the original information, the defendant had not been legally committed by a magistrate, and this ground is available and the information will be set aside thereon, if the facts warrant it, and a new information substituted therefor, if the court so orders, when the original information charges an offense different from that for which the accused has been committed. (*People v. Clayberg*, 26 Cal. App. 614, [147 Pac. 994], and cases named therein.)

Section 1008 of the Penal Code authorizes the court to allow the district attorney to amend either an indictment or an information under certain qualifications. That section, in so far as it is of interest to the present discussion, reads as follows: "An indictment or information may be amended by the district attorney without leave of court, at any time before the defendant pleads. Such amendment may be made at any time thereafter, in the discretion of the court, where it can be done without prejudice to the substantial rights of the defendant. An indictment cannot be amended so as to change the offense charged, nor an information so as to charge an offense not shown by the evidence taken at the preliminary examination. . . . "

From the nature of the order allowing the district attorney to change the charge against the defendant, it is obvious that the court assumed to act under section 1008, and so intended that the effect of its order should merely be to grant to the prosecuting attorney leave to amend the original information. But we do not conceive it to be important here to consider whether the act of the district attorney in changing, by permission of the court, the offense charged in the information as it was originally filed constituted, in legal effect, an amendment of the original information or, viewing the order as having the effect of setting aside the original information, the filing of a new information in lieu of the original; for, in either case, the objection of the defendant to the proceeding

cannot be sustained upon any view of which it may be susceptible.

Assuming that the amendment of the information and not the filing of a new one was the proper course (and a forceful argument might be advanced that it was properly a case for an amendment, inasmuch as the lesser crime to which the charge was reduced is necessarily included in the crime originally charged), then, in that case, the ground upon which the defendant based his motion would not in any event be tenable. Section 1008, as will be noted, expressly provides that *an information may be amended at any time after a plea has been entered thereto by the defendant,* in the discretion of the court, and the only question which could arise in such case is whether the allowance of the amendment, after the plea, constituted an abuse of discretion or, which would be equivalent thereto, resulted in prejudice to the substantial rights of the defendant, and that question cannot be raised by such a motion. But, assuming that that question is now properly before us, we cannot perceive, from the circumstances of the case, wherein the substantial rights of the defendant could have been prejudiced in the remotest degree by the action of the court in allowing the amendment. The crime charged under the amendment is, as before suggested, and as is manifest, included within the crime of assault to commit murder, which, as seen, was the original charge upon which the defendant was informed against. All the elements of the original charge, except that of an intent to take life, are involved in the charge preferred under the amendment. The evidence taken and heard at the preliminary examination necessarily showed that the crime of assault with a deadly weapon had been committed, even if it went further and disclosed that such assault was made with the intent to commit murder. The witnesses, both those for the people and those for the defendant, must have been the same in either case. Their testimony, except that of the physician who professionally attended the prosecuting witness, necessarily bore upon the circumstances under which the assault was made. Had the charge remained as originally made, the element of intent to murder, if really in the case, must necessarily have been shown by or inferred from the circumstances of the assault as detailed by these witnesses, and, as stated, these same circumstances necessarily constituted the subject of their

testimony in the trial of the lesser offense charged. The defendant was, therefore, as well prepared to proceed with the trial of the case under the purported amended information as he would have been had the trial been had upon the original information.

But let us look at the situation from another viewpoint. Suppose that the changing of the offense as it was originally charged amounted in legal effect to the filing of another information charging the offense for which the defendant had been committed, but which offense was of an entirely different nature from the one originally charged, and the later information had been filed after the time within which it should have been filed after the accused had been committed. In that case the defendant should have moved and, in the absence of a showing of good cause for deferring the filing of said information after the time prescribed, the court would have been required, to dismiss the same. (Pen. Code, sec. 1382.) Or, granting that the purported amendment, in actual legal effect, involved the charging of an offense not shown by the evidence taken at the preliminary examination, then the course which the law points out and which the defendant should have pursued was to make a motion to set aside the information on the ground that, before the filing thereof, he had not been legally committed by a magistrate. (Pen. Code, sec. 995.) But the ground upon which the defendant moved to set aside the new or amended information, to wit, that an information cannot be amended at any time after the defendant has pleaded thereto, is not among those enumerated in section 995 of the Penal Code, which expressly prescribes and, by consequence, necessarily limits the grounds of such a motion, as follows: ''1. That before the filing thereof [the information] the defendant had not been legally committed by a magistrate; 2. That it [the information] was not subscribed by the district attorney of the county.''

From the foregoing views, it follows that the objection to the action of the court in the respect here considered cannot, as before stated, be sustained upon any theory upon which it may be considered.

It is next contended that the evidence is insufficient to support the verdict. We cannot say so.

The assault took place at Lathrop, in San Joaquin County, on the afternoon of the thirtieth day of May, 1915. The per-

son assaulted was one Jactano Decicco. The latter's brother owned a house in Lathrop. It was occupied by a tenant and used as a rooming and boarding house. At this house the defendant lived. It appears from the testimony of Decicco that, on the day the assault was committed, he went to his brother's house to procure some garden hose. When he was approaching and within sight of the house he saw the defendant standing in the yard, which was inclosed by a fence. Upon reaching the gate opening into the yard, and just as he was about to enter the yard through the gate, the defendant, addressing him, asked him what he wanted, to which question Decicco replied that he wanted to get the hose or a mower (the testimony is somewhat confusing or inconsistent as to the article Decicco wanted), and thereupon the defendant said to Decicco, "You are not wanted here." Some words were then exchanged between the two, Decicco saying, "All right," and turned to leave the premises. Decicco observed, while they were quarreling, that the defendant had a knife in his hand. When Decicco started to leave the place, the defendant left the yard and followed and overtook him and thrust a knife blade into the middle of Decicco's back. The wound thus produced was near the spine, and the doctor, who was immediately called to attend Decicco, said that it was at least an inch deep, an inch or an inch and a half wide, and bled profusely, and caused Decicco to be confined to his bed for some days.

The witness, Miss Amy Taylor, testified that, as she was walking along the street near where the trouble occurred, she was attracted by loud talking and, turning to the direction from which the sound of the voices came, saw the defendant and Decicco, the former on the inside and the latter on the outside of the yard of the house above referred to. They were talking in a foreign language and apparently quarreling. Later she again turned to see if they were still quarreling, and at this time they were both on the outside of the yard and on the ground, engaged in a struggle with each other. Finally, she saw the defendant thrust the knife into the body of Decicco.

Several other witnesses saw Decicco after the encounter lying on the ground on the outside of the yard. There is also testimony that, immediately after stabbing Decicco, the

defendant left the scene, going away from the house where he roomed and boarded.

The constable at Lathrop, having been informed of the trouble and the assault upon Decicco, started in quest of the defendant, and found him lying in a manger in a barn in Lathrop, his entire body being covered with hay.

The defendant claimed self-defense, and told an entirely different story. He testified that the difficulty occurred in the room occupied by him in the rooming and boarding house mentioned; that Decicco had invited him to drink some wine, which he refused; that Decicco then charged him with a gallon of wine for which he had already paid; that a quarrel over that matter ensued and that Decicco called him a "s—n of a b—h" three different times, grabbed hold of and "embraced" him, and he fell to the floor; that thereupon Decicco struck him four times, and was in the act of getting hold of a piece of iron lying on the floor hard by, when, believing himself to be in danger of losing his life or suffering serious bodily injury at the hands of his assailant, he drew a knife from his pocket and thrust the blade into the back of Decicco.

Thus it is readily to be seen that there is a pronounced conflict in the evidence upon the question whether, in assaulting the prosecuting witness, the defendant acted in necessary self-defense. There were also shown some inconsistent statements made by the prosecuting witness as to some of the circumstances leading to the trouble between the two men. These contradictory statements, however, were, in the main, as to matters which were of little consequence. For illustration, it was shown that the prosecuting witness stated at the preliminary hearing of the charge that his purpose in going to the house where or near which the assault took place was to procure a mower, whereas, at the trial, he said that his object in going there was to get some hose. But, whatever might have been the nature of the inconsistent statements made by the witnesses, it was for the jury and not for this court to consider them in determining how far, if at all, they discredited the witnesses whose testimony was so characterized, and thus to ascertain and admeasure the weight to which such testimony was entitled as in proof of the defendant's guilt. And likewise, as has so often been declared in the cases, the decision of controverted questions of fact upon

conflicting evidence is wholly a function of the jury and not of reviewing courts. As was well said in the case of the *People* v. *Emerson,* 130 Cal. 563, [62 Pac. 1069] : "If the evidence which bears against the defendant, considered by itself, and without regard to conflicting evidence, is sufficient to support the verdict, the question ceases to be one of law—of which alone this court has jurisdiction—and becomes one of fact upon which the decision of the jury and the trial court is final and conclusive."

The record clearly discloses evidence sufficient to support the verdict.

The next assignment involves an attack upon the action of the court in refusing to adopt and read to the jury a number of instructions proposed by the defendant and which contained a statement of the law of self-defense. The court in plain language instructed the jury at length and correctly upon the law of self-defense, and in substance and effect stated all that was contained in the instructions proposed by the defendant. A trial court is not required repeatedly to state the same principle of law to a jury; hence the rejection of the defendant's instructions upon self-defense cannot stand as the predicate for a reversal.

We have found no error in the record violative of the substantial rights of the defendant, and the judgment and the order appealed from are affirmed.

Chipman, P. J., and Burnett, J., concurred.