[Crim. No. 7884. Second Dist., Div. Two. Sept. 19, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. QUANNIA ALLEN BAKER, et al., Defendants and Appellants.

Ramsey & Emlein and Milton Emlein for Defendants and Appellants.

Stanley Mosk, Attorney General, and George W. Kell, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—This is an appeal by two of four defendants who, in a jury trial, were found guilty of the crime of rape by force and violence in violation of section 261, subdivision 3, of the Penal Code. Appellant Baker was charged in a seven-count information with (a) two counts of forcible rape of the same victim on different dates; (b) four counts charging him with the commission of acts of sexual perversion in violation of section 288a of the Penal Code, and (c) one count of assault upon another party by means of force likely to produce great bodily injury in violation of section 245 of the Penal Code.

An information charging appellant Van Hook with committing the same wrongs was consolidated for trial with the information against Baker. At the conclusion of the prosecution's case, an amended information was filed against appellant Van Hook wherein two counts charging him with acts of sexual perversion were replaced by counts charging him with participation in certain acts of sexual perversion committed by appellant Baker and codefendant Burke.

We regard it as most fortunate that counsel for appellants very properly have recognized the utter futility of suggesting that the evidence does not provide abundant support for the verdicts of guilt. We are therefore spared the necessity of spreading a recital of the disgusting and degrading details of appellants' conduct upon these pages. Accepting the testimony of the victim, which was corroborated by eyewitnesses, the evidence was overwhelming that the several defendants,

acting in concert, individually raped the victim after appellant Baker had threatened her with a bayonet which he held to her throat. Also, there was more than ample evidence to support convictions of all the defendants on the several charges of sex perversion.

The following quotation from appellants' opening brief is a most eloquent description of the character of the two appellants and their codefendants:

"To understand the events of this case, the various cognomens by which the parties called themselves must be understood. The Uncouths were a club of motorcycle riders unassociated with the American Motorcycle Association. To this club belonged the defendants Baker, [one of the appellants herein], known as Red; Burke, known as Spider; Hewitson, known as Crazy Jim; May known as Chi Town; and Van Hook, [the other appellant], known as 'Daddy Cool.' Also associated with this group were Jerry Machado, also known as Shad and Barbara Van Doren known as The Jinx.

"Living with Leah Bullard, a lesbian known as Mr. Lee, were Roseanne Fazio, also known as Rose, and Mrs. Sharpe, Rosalind Terry Hill, sometimes referred to as Terry or red-haired Terry, and Dianne Pope referred to as Dee or Queer Dee. Russel Hagen a friend of Mr. Lee's was known as Sinner. Several of the Uncouths resided in an apartment on Junipero, known as their 'pad,' and the entire group frequented an unsavory part of the west and beach area known as 'The Jungle.'"

Appellants advance only two assignments of error: (1) that the district attorney was guilty of prejudicial misconduct, and (2) that it was improper to allow a second amendment of the information filed against appellant Van Hook after the prosecution had rested.

Concerning the first asserted error, it may be noted preliminarily that the trial herein commenced on May 4, 1961, and continued to June 6, 1961, when the jury retired for its deliberations. The reporter's transcript comes to us in 13 volumes with a total of 3,151 pages. Appellants cite approximately 12 instances of alleged misconduct on the part of the prosecuting officer during the taking of the evidence and several during the argument to the jury.

■■■ At the outset, it should be observed, as our Supreme Court held in *People* v. *McCracken,* 39 Cal.2d 336, 349 [246 P.2d 913], that even *serious* misconduct on the part of the

prosecuting officers should not be regarded as sufficient ground for reversing a judgment of conviction where the evidence of guilt was so overwhelming that it would have been impossible for the jury to have reached any other verdict. The statement that the evidence of guilt in the instant case is overwhelming is a conservative one.

Appellants' first asserted error concerns the statement of the deputy district attorney that defendants at the time of trial apparently did not wish to appear before the jury as they did at the time of the events in question. This statement occurred during the attempt of the prosecution to get into evidence a photograph of the defendants taken at the time of their arrest, which followed within hours of the latest of the offenses charged.

As above indicated, defendants were members of an "outlaw" motorcycle club known as the "Uncouths." The photograph showed them in the bizarre costumes favored by such groups, but apparently they were attired much differently when they were in the courtroom. It is reasonably argued that the picture was relevant to the issue of consent on the part of the victim, for the grotesque appearance of a disheveled gang in boots and jackets might well have affected the decision of a young woman regarding the amount of resistance that she could make without incurring the risk of grievous physical injury. (*People* v. *Darling*, 58 Cal.2d 15, 21 [22 Cal.Rptr. 484, 372 P.2d 316].) However, the trial judge apparently felt that the admissibility of the offered exhibit was questionable, or that it was unnecessary, because he sustained the objection of the defense and adequately instructed the jury to disregard it.

The next alleged error occurred when the prosecutor was arguing the admissibility of an extrajudicial admission made by Baker shortly following one of the incidents in question. Baker had referred to an act of sexual perversion with a "redhead," but had not specifically identified her by name. The prosecutor said, "It is a reasonable inference. Now, he could explain it—when he takes the stand, I mean. Certainly he can explain who he meant, but certainly there is enough to connect it up."

An objection was made by an attorney for one of the nonappealing defendants that it was "dangerous" to infer that a defendant had to take the stand to explain anything. In view of the provisions of section 13, article I of the Constitution of this State and section 1323 of the Penal Code, regarding

comment upon the failure of a defendant to explain or deny evidence against him, this statement by way of argument was not unreasonable, and since Baker did in fact testify and denied the statement in question, it is obvious that no reasonable basis for any claim of prejudice exists. (*People* v. *Green*, 153 Cal.App.2d 473, 478 [314 P.2d 828].)

 In a discussion regarding the propriety of objections being made by one of the four attorneys on behalf of defendants not represented by him, the deputy district attorney stated that he was ''caught in a boobytrap.'' Although no defense counsel objected to the statement, the trial judge advised both the deputy district attorney and the jury that since a concert of action was charged against the defendants, it was only reasonable to expect concerted action by counsel in the protection of their clients' interests. Nothing in this exchange could have prejudiced the defendants in the slightest degree.

During a series of objections made by an attorney for a defendant other than the appellants, *all of which were sustained,* the prosecutor in addressing the court referred to the objections as ''a camouflage.'' *No objection was made to this language.* One witness testified that shortly before the crimes were committed, a discussion was had among the four defendants regarding which of two girls should be involved. The witness further testified that someone suggested that they ''flip a coin.'' The prosecutor in a later question asked, ''What was said or done in response to that brilliant suggestion?'' No objection was made thereto, but the trial judge, as he did throughout the trial, demonstrated his alertness to prevent any act of questionable propriety. He admonished the prosecuting attorney that the word ''brilliant'' was improper and unnecessary.

At one point the prosecutor attempted to prove that a witness had been threatened regarding her anticipated testimony. Following a discussion thereon, the court instructed the deputy that this would not be permitted unless he could directly connect the defendants with any such threats and very carefully and properly instructed the jury with respect to the distinction which they should make between remarks and questions of counsel and the testimony given by the witnesses. The prosecutor then propounded a question designed to bring out the threats to the witness. A defense counsel again objected and moved for a mistrial. The motion was denied and the district attorney abandoned the subject.

Thereafter, one of defense counsel was cross-examining a police officer concerning remarks made by some unknown third person to the officer while he was looking for the prosecutrix. The district attorney objected to the line of questioning, asserting that it was "a fishing expedition" or "a sham or smokescreen." Referring back to the defendants' assertion of misconduct and their motion for a mistrial, the prosecutor stated, "I am not entitled to ask for misconduct or a new trial. The People have no such right. . . ." We are wholly unable to perceive how this comment could have had any prejudicial effect.

During cross-examination of the prosecutrix, a defense counsel apparently sought to establish that she had not been taken into protective custody by the police following the incidents in question, as several police officers had testified, but actually had been arrested on a charge of vagrancy. Believing that such was not the case and that defense counsel knew it, the prosecutor said that such an intimation was "highly improper and borders on the unethical." The trial judge immediately and properly admonished the prosecutor and explained to the jury, not only the effect of the evidence, but that there was no question as to the ethics of any counsel.

Appellants cite several instances where the district attorney in his argument to the jury referred to a "plan" or "scheme" of the defense, asserted that the defendants "vacillated" in their stories and that they were fabricated. We know of no rule which prevents the prosecution from discussing and questioning the validity of the theory of the defense. Certainly there is nothing improper in pointing out conflicts in the testimony of witnesses or in assertions to the effect that indicated testimony is not deemed worthy of credit, so long as such comments are restricted to the evidence presented and not based upon the asserted or presumed personal knowledge of the district attorney acquired from some other source. (*People* v. *Mora,* 139 Cal.App.2d 266, 272 [293 P.2d 522] ; *People* v. *Gonzales,* 151 Cal.App.2d 112, 116 [311 P.2d 53].)

 Appellants also cite the prosecutor's reference to the defendants as "animals," a "pack of vultures," "rapists and sex degenerates," "a particular breed of cats . . . not just an ordinary alley cat." These expressions relating to animals, vultures and cats, were used metaphorically in describing defendants' admitted ability to perform sexual acts before spectators and in picturing them as appearing differently in

724

court than they did when they were in the "jungle," the term used by both sides to describe the part of the city in which these events occurred. The use of such terms is permissible when "reasonably warranted by the evidence" and in the instant case they fall within the "wide range of descriptive comment and the use of epithets which are reasonably warranted by the evidence" allowed to prosecuting attorneys. (*People* v. *Terry*, 57 Cal.2d 538, 561 [21 Cal.Rptr. 185, 370 P.2d 985], and cases cited therein.) Only one objection was made to such expressions, and the trial court adequately advised the jury thereon. ▮ Where no objection is made to this type of expression, any claim of error ordinarily is deemed waived. (*People* v. *Perez*, 58 Cal.2d 229, 247 [23 Cal.Rptr. 569, 373 P.2d 617]; *People* v. *Lyons*, 50 Cal.2d 245, 262 [324 P.2d 556]; *People* v. *Codina*, 30 Cal.2d 356, 362 [181 P.2d 881].)

▮ The term "misconduct" when applied to the act of an attorney implies a dishonest act or an attempt to persuade the court or jury by the use of deceptive or reprehensible methods. (*People* v. *Horowitz*, 70 Cal.App.2d 675, 699 [161 P.2d 833].) In this case, there can be no fair assertion that either the prosecutor or any of counsel for the defendants conducted themselves in such fashion. ▮ Further, unlike the case of *People* v. *Perez, supra,* the evidence here was not "closely balanced" and the trial court, usually on its own motion, more than adequately protected the interests of the defense.

Viewing the record as a whole in this case, any asserted impropriety in the conduct of the deputy district attorney could not possibly have changed the just determination made by the jury. The defense was given the widest latitude in presenting its case and was fully protected at all times by a vigilant trial court. The evidence against defendants was overwhelming and appellants received the fair and impartial trial to which they were entitled.

There is no need to engage in any lengthy discussion of appellants' second assignment of error, since the issue raised thereby is moot in view of the verdict rendered by the jury. ▮ The only question which can arise from the granting of leave to amend is whether or not the allowance of the amendment constituted an abuse of discretion or resulted in prejudice to the defendant. (*People* v. *Walker*, 82 Cal.App. 2d 196, 198 [185 P.2d 842]; *People* v. *Chober*, 29 Cal.App. 627, 630 [157 P. 533].)

The amendment allowed here was covered by evidence taken at the preliminary hearing and did not actually change the offense charged, i.e., a violation of section 288a, nor did it involve any different victim or any different events. It merely charged appellant Van Hook as a participant in the criminal acts committed against the victim by another defendant rather than as a direct principal. (Cf. *People* v. *Tallman*, 27 Cal.2d 209, 213 [163 P.2d 857].) Since the defense knew from the beginning that the prosecution was proceeding under the theory that all the defendants acted in concert, they could not truly be said to have been taken by surprise by this amendment. Moreover, in the instant case, the jury returned "not guilty" verdicts in favor of all defendants on all counts of violating section 288a; it is, therefore, obvious that appellants were not prejudiced by the amendment.

The judgment against both appellants and the orders denying their motions for a new trial are, and each is, affirmed.

Fox, P. J., and Ashburn, J., concurred.