[Civ. No. 883. Fourth Appellate District.—June 17, 1932.]

HELEN HOLT, Respondent, v. YELLOW CAB COMPANY OF SAN DIEGO (a Corporation) et al., Appellants.

A. Haines, Gray, Cary, Ames & Driscoll, E. P. Sample, W. H. Wylie and Arthur F. H. Wright for Appellants.

Whelan & Whelan for Respondent.

BARNARD, P. J.—This is an appeal from a judgment for damages for injuries sustained in an automobile collision, based upon the verdict of a jury. The respondent was a passenger for hire in a taxicab owned and operated by the appellants. The collision occurred on First Street, between Cedar and Date Streets, in the city of San Diego, First Street is a paved street, fifty-two feet wide from curb to curb, running north and south. As the taxicab proceeded north on the occasion in question, it collided with a south-bound automobile practically in the center of First Street and about forty-six feet north of the Cedar Street intersection, at a time when no other traffic was in sight.

It is first urged that there is no substantial evidence of negligence on the part of the driver of the taxicab. This driver testified that when he was at the intersection of First and Cedar, he saw the other car at the intersection of First and Date, which was 300 feet away; that this other car was then coming south, being a little west of the center line of the street; that shortly thereafter that car wobbled back and forth across the center line of the street several times, finally going over to within one or two feet of the east curb of First Street; and that it then suddenly came over to the center of the street and struck the taxicab. The driver of the taxicab also testified that during this time he was proceeding north at a speed of fifteen miles per hour; that he was about in the center of First Street; and that when he first saw the other car he tried to pull over to his right, but seeing that the other car was coming over to that side, he pulled over to his left and was trying to get out of the way when he was hit. On the other hand, the respondent testified that as they reached the Cedar Street intersection she saw the other car coming south on

First Street; that both the other car and the taxicab were traveling about the center of the street; that the other car was not wobbling from side to side, and did not swerve over toward the east curb; and that right after they passed the Cedar Street intersection the taxicab driver suddenly swerved his car to the left then back to the right again, at which time the collision occurred. Another passenger in the taxicab testified that it was proceeding north along the center of the road; that just after they passed the intersection of First and Cedar Streets he felt the taxicab whip to his left and back again; that he then looked to the front and saw the other car right in front of them; that just before the impact there was more of the road on his right-hand side than there was on his left; that there was an arc-light at the Cedar Street intersection near which the collision occurred; and that the taxicab was traveling between 25 and 30 miles an hour. After the collision the taxicab came to rest pointing in a northeasterly direction and with its rear about twelve feet from the west curb line of First Street. All of the broken glass was west of the center line of First Street and the two rear wheels of the taxicab and the right front wheel of the other car were broken. The evidence is conflicting as to just how the cars struck, there being some evidence that the other car hit the taxicab near the middle of its right side, and other evidence that the right front wheels of both vehicles first came together. Some contention is made by the appellants that the position of the cars after the accident conclusively demonstrates that the taxicab was not traveling on its wrong side of the street, but that the other car was. Too many factors enter into an automobile collision to give certainty to any such a conclusion (*Fishman* v. *Silva,* 116 Cal. App. 1 [2 Pac. (2d) 473]; *Johnston* v. *Peairs,* 117 Cal. App. 208 [3 Pac. (2d) 617]). It may also be observed that an inference may reasonably be drawn from the physical facts shown, including all marks upon the pavement, that the taxicab was entirely on its left-hand side of the road before it was struck. In any event, there is evidence that the driver of the taxicab was proceeding along the middle of this street, thereby violating section 122 of the California Vehicle Act, that he was going faster than the law permitted at that time and place, and evidence to indicate that he had ample time and oppor-

tunity to do more than he did in an effort to escape the collision. It is apparent that the jury did not believe the testimony of this driver and while the evidence is somewhat conflicting, it is sufficient to support the implied finding of negligence upon the part of the driver of the taxicab.

■ The second point raised is that the court should not have instructed the jury in respect to the doctrine of *res ipsa loquitur*. It is argued that this doctrine should never be applied to a case, involving a passenger in an automobile, which grows out of a collision between that and another car, because of the presence of the question as to the actions and responsibility of the driver of the other car. This contention is without merit (*Edwards* v. *Gullick*, 213 Cal. 86 [1 Pac. (2d) 11]). In the case before us, the driver of the other car was not a defendant, and in its instructions the court confined the application of the doctrine to a consideration of the operation of the taxicab (*Kilgore* v. *Brown*, 90 Cal. App. 555 [266 Pac. 297]). There was no confusion with any other issues. As to the general application of the doctrine, it would seem that this passenger for hire should be entitled to an explanation from the carrier, as to why such a collision occurred in the center of a broad and lighted paved street, unencumbered by other traffic. Such a fact does speak for itself in the absence of a satisfactory explanation. A closer question would have been presented had the instruction been objected to on the ground that direct evidence had been introduced to show the cause of the accident, but in any event it was harmless under the circumstances appearing (*Edwards* v. *Gullick, supra*).

■ The further point is raised that even if it was not reversible error to instruct the jury in relation to the doctrine of *res ipsa loquitur*, still the court erred in concluding such an instruction as follows: ''When and if the plaintiff makes such proof, the burden of proof shifts to the defendants to show their freedom from negligence.'' This, in fact, is the principal attack made upon the instruction covering the doctrine referred to. It is argued that the burden of proof never shifts to the defendant, but, at most, this doctrine merely imposes upon a defendant the burden of going forward with the evidence to the extent of explaining the unusual happening which makes the doctrine applicable. This is true, of course, and the burden of proving

his case always rests upon the plaintiff. But as pointed out in many cases, the effect of such language as here complained of is not to shift the burden of proof of the entire case to the defendant, but merely to point out to the jury that where the presumption applies, the defendant must then meet the *prima facie* case with sufficient evidence to balance any presumption of negligence upon his part. As showing that this particular language was harmful in this case, the appellants rely upon a portion of another instruction in which the jury was told that where the burden of proof rests upon a party, the facts in connection therewith must be established by a preponderance of the evidence. The other instruction referred to correctly and fully stated the law in connection with the matters therein considered. In many other instructions the jury was repeatedly told that the burden was upon the plaintiff to prove by a preponderance of the evidence that the defendants were negligent and that such negligence was the proximate cause of the injury. Not only was this repeated many times, but the jury was also instructed that if the evidence as to negligence on the part of the defendants was evenly balanced, the plaintiff could not recover. The point here raised by appellants has been frequently considered, and we think it must be taken as established that the use of such language is not reversible error, where the rest of the instructions are proper (*Osgood* v. *Los Angeles Traction Co.*, 137 Cal. 280 [92 Am. St. Rep. 171, 70 Pac. 169]; *Bonneau* v. *North Shore Ry. Co.*, 152 Cal. 406 [125 Am. St. Rep. 68, 93 Pac. 106]; *Cody* v. *Market Street Ry. Co.*, 148 Cal. 90 [82 Pac. 666]; *Faras* v. *Lower California Dev. Co.*, 27 Cal. App. 688 [151 Pac. 35]; *Gonzales* v. *Nichols,* 110 Cal. App. 738 [294 Pac. 758]; *Bezera* v. *Associated Oil Co.*, 117 Cal. App. 139 [3 Pac. (2d) 622]; *Kilgore* v. *Brown, supra; Lawrence* v. *Pickwick Stages,* 68 Cal. App. 494 [229 Pac. 885]; *Atkinson* v. *United Railroads,* 71 Cal. App. 82 [234 Pac. 863]).

■ It is next urged that the court erred in giving the following instruction:

"You are further instructed that if it is shown by a preponderance of the evidence that immediately prior to the collision complained of in the complaint the defendant Leo A. Goozey saw the plaintiff in a state of danger from which she could not escape by the exercise of ordinary care, and

that defendant Leo A. Goozey was then and there aware of her dangerous situation, under such circumstances that he realized, or by using ordinary prudence ought to have realized, her inability to escape therefrom, and if defendant, Leo A. Goozey, after seeing plaintiff's perilous situation, had still a clear chance, by exercising ordinary care, to avoid the collision, and failed to do so, then your verdict should be for the plaintiffs.''

It is objected that this instruction embodies the ''last clear chance'' doctrine and that this has no application here. At the request of the appellants, the court had given a number of instructions to the effect that the appellants would not be liable if the driver of the taxicab, without fault on his part, took the wrong course in meeting a sudden emergency. Having given these instructions, there was no error in also instructing the jury to the effect that the appellants would be liable if the driver of the taxicab, in the exercise of ordinary care, should have avoided the collision even after the dangerous situation arose. While the instruction complained of is not happily worded, it sufficiently covers this point and contains nothing prejudicial to the appellants.

■ It is contended that counsel for the respondent was guilty of misconduct in that at some stage of the trial, one of such counsel made reference to the alleged fact that the appellants were covered by insurance. Appellants neither set forth what was supposed to have been said, when it was said, nor point out a word of evidence in the record to substantiate the charge.

■ The last point raised is that the amount of the verdict is excessive. The jury returned a verdict for $24,000 which, in connection with a motion for new trial, was reduced by the trial court to $12,000, the reduction being accepted by the respondent. The record does not give the age of the respondent, but it is apparent that she was a young woman. In addition to many bruises, she suffered a comminuted fracture of the thigh bone, with a number of fragments of bone driven into the muscles, and one coming nearly through the skin. In setting the fracture, it was necessary to make an incision and insert a steel plate, fastened by six screws, to hold the fragments of bone in place. She was in the hospital from November 13, 1929, until some

time the next March, during all of which time her leg and her body were in a cast. There was evidence that she suffered great pain; that at the time of the trial, in June, 1930, the pain in her leg was still severe; that she still experienced great difficulty and pain in walking over uneven surfaces, even with crutches; that she might be able to walk without crutches after another five or six months; that there was a slight angulation in the bone as it had set; that she would limp as she walked for another year, and possibly permanently; and that she had already spent $1477.75, for hospital and doctors' fees. At the time of the trial, a bone specialist testified that the bone was softening around the screws holding the steel plates; that a further operation would be necessary to remove the plate; that such an operation would confine her to the hospital for three or four weeks and ''lay her up'' for two months; and that it would cause her to use crutches for an additional three months. There was also evidence that the additional operation would cost $175 for surgeons' fees, besides hospital and nurses' expenses. At the time of the trial she had lost twenty-one weeks' salary, amounting to $651, and there was little probability that she would be able to work for another year to come. There is a fair inference from the evidence that her earning capacity will be permanently reduced. In view of this evidence, it cannot be said that the amount of the judgment is so excessive as to suggest passion and prejudice. The amount awarded by the jury was reduced by the trial court in the exercise of its discretion, and we find nothing in the record from which it may be said that this discretion was abused in not further reducing the amount thereof.

The judgment is affirmed.

.Jennings, J., and Scovel, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 12, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 15, 1932.