[Civ. No. 4996. Fourth Dist. May 2, 1956.]

MAURICE M. DAVIS et al., Appellants, v. OSCAR
WILHELM FRANSON, Respondent.

Miles & Sears for Appellants.

Stammer, McKnight & Barnum for Respondent.

CONLEY, J. pro tem.*—Maurice M. Davis, a Texas attorney, and his wife, with their friends, Mr. and Mrs. W. T. Scully, were approaching the city of Fresno in the Davis automobile on Highway 99 when the defendant Franson drove his car at a leisurely pace across the roadway in front of them. The resulting collision caused injuries to all of the plaintiffs, ranging in severity from serious for Mrs. Davis to slight for the Scullys.

The two principal questions submitted to the jury were whether the defendant Oscar Wilhelm Franson was negligent, and whether the plaintiffs were guilty of contributory negligence. The jury brought in a verdict for the defendant and against all of the plaintiffs. Thereafter, the trial judge denied plaintiffs' motion for a new trial. Plaintiffs appeal from the judgment and attempt to appeal from the order denying their motion for a new trial.

The principal contentions made by appellants are: (1) That the evidence is insufficient to sustain the verdict; (2) That counsel for respondent was guilty of repeated and serious prejudicial misconduct; (3) That the court erred in refusing to instruct the jury relative to the burden of proof as to contributory negligence.

In the area where the collision occurred, just south of the overpass at the southern approach to the city of Fresno, Highway 99 is a freeway with double northbound and southbound lanes divided by a wide parkway defined by curbs and planted to lawn. The highway itself, though commonly said to run north and south, actually is laid out in a northwesterly and southeasterly direction, following a course parallel to the Southern Pacific railroad tracks. As a consequence, the east and west highways and roads following the section lines

*Assigned by Chairman of Judicial Council.

of the government survey meet the highway at angles differing from the 90-degree straight crossings characteristic of a normal western roadway grid. This inevitably leads to some confusion in the operation of safety devices and in the regulation of the actual flow of traffic. For example, in this case, both cars had a green light or "go" signal at the time of the collision, although the pathway of the defendant's car actually crossed that of the plaintiff.

At Church Avenue there is a streetwide break in the parkway dividing the north and southbound lanes of the highway and adjacent to the two southbound lanes and west of the west curb of the parkway there is a third wide lane marked "LEFT TURN" for vehicles headed south on the highway but intending to cross the northbound lanes of the highway to go easterly on Church. The break in the dividing strip is 140 feet wide and the west edge of the dividing strip is 38.6 feet from the west edge of the northbound traffic lane. The intersection was unobstructed as to visibility. The day was bright and the pavement dry. The intersection was controlled by six traffic lights, and at the time of the wreck, the lights were green for both Mr. Davis and Mr. Franson.

The Davis car, on its way from Texas to San Francisco, where the Scullys planned to attend a life insurance convention and the Davises to spend a vacation, was in the more westerly of the two northbound lanes, traveling at a speed estimated by the driver, Mr. Davis, to be 45 to 50 miles per hour. Mr. Franson, accompanied by a friend, Amil Fosberg, was going south on the highway at about 15 miles per hour, intending to turn east on Church Avenue. As he reached the northerly end of the break in the dividing strip, he started to make a gradual left turn. From that point he went approximately 97.7 feet to the most westerly edge of the two northbound lanes and continued on east. This westerly northbound lane was 13.2 feet wide. The front of the Davis car struck the right front side of the Franson car about two and one-half feet east of the center line dividing the two northbound highway lanes. The Davis automobile moved 18 feet after the impact and the defendant's car came to rest only a few feet from where the plaintiff's Chrysler stopped.

Mr. Davis testified that he saw the defendant commencing to make his left turn. He did not immediately put on his brakes or change direction but blew his horn as a warning. He admitted that if he had put on his brakes then, the accident could have been avoided. He again blew his horn, put

on his brakes, turned slightly to the right and the collision occurred. At the instant of impact, the Davis Chrysler had been slowed by the brakes to a speed of about 20 to 25 miles per hour.

A summary of the contentions made by appellants relative to defendant's negligence is that Mr. Franson was negligent in not keeping a vigilant outlook, in failing to give a left turn signal, and in neglecting to yield the right of way inasmuch as the Davis car was near enough to the intersection to constitute an immediate hazard. (Veh. Code, § 551.)

Franson, as a result of traumatic amnesia, could not recall any of the events of the accident; he did not take the stand, but his deposition was read into the record; he did not call the guest who had been with him as a witness.

If there is any *substantial* evidence supporting the jury's finding in favor of the defendant, its determination is final and we cannot disturb the verdict. (*Pfingsten* v. *Westenhaven*, 39 Cal.2d 12, 19 [244 P.2d 395]; *Rose* v. *Melody Lane*, 39 Cal.2d 481, 487 [247 P.2d 335]; *Estate of Teel*, 25 Cal.2d 520, 526 [154 P.2d 384]; *Estate of Trefren*, 86 Cal.App.2d 139, 142 [194 P.2d 574].)

In the instant case defendant was unquestionably entitled to the presumption of due care. (Code Civ. Proc., § 1963, subd. 4); *Scott* v. *Burke*, 39 Cal.2d 388, 394 [247 P.2d 313]; *Westberg* v. *Willde*, 14 Cal.2d 360, 365 [94 P.2d 590]; *Anthony* v. *Hobbie*, 25 Cal.2d 814, 819 [155 P.2d 826].) He could remember nothing relative to the facts of the accident and he called no witness or witnesses to the stand. In *Gigliotti* v. *Nunes*, 45 Cal.2d 85, 93 [286 P.2d 809], it is said:

"Although there is no room for the presumption where the driver or other person whose claimed negligence is at issue himself testifies to his actions at the time involved (see *Speck* v. *Sarver* (1942), 20 Cal.2d 585, 587-588 [128 P.2d 16]), the rule is established that if such person be deceased or unable to testify by reason of loss of memory, the fact that other witnesses for the parties testify fully as to the acts and conduct of the allegedly negligent person does not deprive the party relying on the presumption of the benefit thereof unless the testimony which he himself produces 'under circumstances which afford no indication that the testimony is the product of mistake or inadvertence . . . is wholly irreconcilable with the presumption sought to be invoked.' (*Westberg* v. *Willde*, (1939) 14 Cal.2d 360, 365-368 [94 P.2d 590]; *Mar Shee* v.

*Maryland Assur. Corp.* (1922), 190 Cal. 1, 9 [210 P. 269]);
*Chakmakjian* v. *Lowe* (1949), 33 Cal.2d 308, 313 [201 P.2d
801].) Plaintiffs' evidence in the present case is not irre-
concilable with the presumption.''

■ First of all, let us inquire whether the presumption of
due care attaching to the defendant because of his traumatic
amnesia would be sufficient of itself in the circumstances de-
veloped by this record to constitute substantial evidence in
his favor. The affirmative answer given to this question by
the Supreme Court in *Smellie* v. *Southern Pac. Co.*, 212 Cal.
540 [299 P. 529], is still the law of California. There a
judgment of nonsuit on the ground of contributory negli-
gence was granted when one of the defendants, called for
cross-examination under the provisions of section 2055 of
the Code of Civil Procedure, testified that the decedent had
urged him to cross the railroad tracks where an oncoming
passenger train was masked by a passing freight. This judg-
ment was reversed on the ground that the testimony of a party
called for cross-examination did not bind the plaintiffs, and
that the presumption of due care on the part of decedent was
substantial evidence which required that the case go to the
jury. ■ But even apart from the presumption of due
care in defendant's favor, it is our view that the jury could
have legitimately determined the questions of negligence and
contributory negligence adversely to appellants. As Franson
approached the intersection first, he had the right of way
if at that time the Davis car was not near enough to con-
stitute ''an immediate hazard.'' The failure on the part of
Franson to give an arm signal for a left turn, if plaintiffs'
witnesses were believed on this point, could well have been
found not to be a proximate cause of the collision. There
were some discrepancies in the testimony concerning the
speed of the Davis car and some inferences relative to it
which could have led to conclusions unfavorable to him. And
the evidence of Mr. Davis himself that the accident could have
been avoided if he had applied his brakes to start with in-
stead of blowing his horn was before the jury. ■ Infer-
ences constituting legitimate indirect evidence may furnish
substantial support to a verdict.

The process of integrating all of the evidence in an action
of this kind, and from a synthesis of the testimony deter-
mining the issues of negligence, proximate cause and con-
tributory negligence, is primarily the duty and right of the
jury. The trial judge in turn, under our system, has the

right and duty to review the testimony which he, with the jury, has heard in the course of the trial. He should not hesitate to use this plenary power to right any injustice which in his opinion has resulted. In this case, the trial judge has approved the verdict, having had in mind, as shown by the complete record, his right to pass on the facts and weigh the evidence. This court's power, unlike that of the trial court on motion for a new trial, begins and ends with the ascertainment that there was substantial evidence supporting the verdict. We shall so find in this case, unless, upon examination, one or more of the several special observations and arguments made by the appellants to the effect that the general rule should not apply should seem valid and convincing.

 First of all, appellants set forth a detailed mathematical calculation as to the relative positions, speeds and courses of the two cars, from which they arrive at the conclusion that the defendant was clearly negligent and Mr. Davis guiltless. This constitutes a powerful jury argument, but it is not equally persuasive on appeal, for its primary basis is the assumption not only of the truthfulness of certain witnesses but of their accuracy, and these are matters which the jury has the clear right to decide. Furthermore, this argument completely eliminates the indirect evidence, both the presumption of due care and the inferences, which the jury had the right to take into consideration. In *Kalfus* v. *Fraze*, 136 Cal.App.2d 415, 424 [288 P.2d 967], it is said: "Where the existing circumstances militate against precise mathematical calculations, this court has stated the rule that on appeal it 'will not make dubious calculations based upon evidence of time and distance and speed (which evidence after all consists of mere opinions of witnesses) for the purpose of upsetting a verdict of the jury as to the facts.' (*Cooper* v. *Stevens*, 17 Cal.App.2d 746, 748 [62 P.2d 763]; *Turner* v. *Clennell*, 9 Cal.App.2d 736, 738 [50 P.2d 851]; *Powell* v. *Powell*, 40 Cal.App. 155, 159 [180 P. 346].)"

Appellants cite *Carr* v. *Holtslander*, 112 Cal.App.2d 589 [246 P.2d 678], in which a judgment for a defendant in an intersection collision case was reversed on appeal. The court held that on the particular evidentiary showing in that case there was no substantial evidence supporting the jury's verdict. Every case is necessarily bottomed on its own facts. We find that the two cases are distinguishable factually.

■ Appellants next contend that the presumption of due care is not available to the defendant because he did not call to the stand Amil Fosberg, the guest who was with him at the time of the collision. The argument is founded on an ambiguity arising from a strictly literal reading of the following excerpt from the opinion in *Downing* v. *Southern Pac. Co.,* 15 Cal.App.2d 246, 254 [59 P.2d 578], in which the presumption of due care is referred to:

"This presumption is one which may be invoked for the benefit of plaintiff when unable to produce any eyewitnesses to a collision and is based upon the sound foundation of the natural law of self-preservation. Where it is possible to call eyewitnesses to testify positively to the facts and the circumstances surrounding the accident, the presumption is not applicable."

A complete reading of the opinion and a consideration of the supporting authorities show that it was not intended to extend the rule relative to the elimination of the presumption as evidence (*Gigliotti* v. *Nunes, supra,* 45 Cal.2d 85, 93) to cover a situation where someone not called as a witness by plaintiff *might* have given testimony irreconcilable with the presumption if he had been called. The failure on the part of the defendant to call his guest, Amil Fosberg, to the witness stand will be referred to again under our discussion of the alleged misconduct of defendant's counsel. It is sufficient to note at this point that a party to an action is not guilty of "wilful suppression" of evidence (giving rise to the presumption set forth in section 1963, subdivision 5 of the Code of Civil Procedure "that evidence wilfully suppressed would be adverse if produced") by merely failing to call a potential witness to the stand. Counsel for a party to a civil action has not only the right but the duty to exercise discrimination in selecting the witnesses for whom his client vouches. Assuming, of course, his honesty and good faith, an attorney may not believe the account of such a potential witness, or may think that he is inaccurate or prejudiced or otherwise disqualified to testify. The record indicates that Fosberg was in Fresno and available for subpoena by either side. No adverse presumption against the defendant arose by reason of his failure to call Fosberg to the stand. There was no showing that defendant wilfully suppressed his evidence. (*Ericson* v. *Petersen,* 116 Cal.App.2d 106, 112 [253 P.2d 99]; *Gist* v. *French,* 136 Cal.App.2d 247 [288 P.2d 1003].)

■ Appellants urge also that as the Scullys could not have been guilty of contributory negligence, and as counsel for respondent told the jury in his argument that if he were on the jury he would find both drivers negligent, the judgment must be overturned as to the Scullys. But, as counsel's statement was not made as an admission or stipulation, it is not absolutely binding on his client. (*Adelstein* v. *Greenberg,* 77 Cal.App. 548, 552 [247 P. 520].) We agree with appellant that the rule "*de minimus non curat lex*" does not apply to the injuries of Mr. and Mrs. Scully; and that if they were entitled to recover at all, they should have received compensatory damages and not merely nominal damages. (14 Cal.Jur.2d, Damages, §§ 7 and 12.) Our conclusion that the Scullys are not entitled to a reversal is based wholly on the general ground that the jury had before it substantial evidence from which it could legitimately conclude that the defendant was not guilty of negligence proximately causing the collision. As the verdict is supported by substantial evidence, we cannot disturb it.

■ Repeated and serious misconduct on the part of respondent's counsel on multiple grounds is next urged by appellants. The first instance occurred in the examination of a traffic officer. In reply to questions of respondent's counsel, the officer testified that an elderly man named Fosberg was a passenger in Franson's car, and that he had taken a statement from Fosberg. The officer was then asked, "And what did he say?" An objection was made on the ground that this would be hearsay, and that there was no showing that Fosberg was not available as a witness. Respondent's counsel argued at some length that the statement was admissible, not to prove the truth of its content, but to show the reason for not calling Fosberg as a witness. The court stated that it was a hearsay statement which merely indicated that Fosberg did not know what had happened when he talked to the officer. At the request of appellant's counsel, the court then instructed the jury to disregard anything that had been said in this connection. The question asked by defendant's counsel called for hearsay; it was an improper inquiry; and the objection was properly sustained. A lawyer is not guilty of misconduct merely because he is wrong as to the law. To constitute misconduct in urging a proposition of law, counsel must do so in bad faith. Respondent's counsel consistently said be believed he had the right to establish in this manner an excuse for not calling Fosberg to the stand.

The good faith of counsel in a matter of this kind occurring during the course of a trial is primarily for the trial court to determine on motion for a mistrial, or on motion for a new trial. Here, the court instructed the jury to disregard everything said in the legal argument on the admissibility of the evidence, and with the giving of such admonition, the misconduct or irregularity is deemed cured except in the most extreme cases. (*Ades* v. *Brush*, 66 Cal.App.2d 436, 445 [152 P.2d 519]; *Wills* v. *J. J. Newberry*, 43 Cal.App.2d 595, 607 [111 P.2d 346]; *McCollough* v. *Langer*, 23 Cal.App.2d 510, 521-522 [73 P.2d 649].)

■ Counsel's statement in his argument "We have found no other witnesses except the adverse parties" was not objected to and must, therefore, be deemed waived. (*McCullough* v. *Langer, supra,* 23 Cal.App.2d 510, 521-522; *Schultz* v. *Sussman,* 7 Cal.App.2d 100, 103 [45 P.2d 409].)

■ Likewise, the comment made in argument with reference to the amendment of the complaint during trial was not objected to by counsel for the plaintiffs and was waived.

■ The defendant was within the legitimate limits of cross-examination in referring to the earlier and then pending automobile accident case of Mr. Davis previously brought in Chicago, as some of the injuries claimed in both appeared potentially, at least, to be duplications.

■ Lastly, as to misconduct, appellants complain of counsel's argument for sympathy for his client, which, in its entirety, is as follows:

". . . (t)here has been talk about sympathy. All of us agree that there should be no sympathy affecting your decision, and if counsel for the plaintiff and for the defendant can agree on any subject, then it ought to be easy for you to agree on it because it's hard for us to agree on anything. But, we agree on that. But let me say this. If there is sympathy in this case, and there is for Mrs. Davis who had a severe broken leg, and unless we are something else than human we feel sympathy, if there is sympathy let a little of that sympathy go to this old gentleman whom you saw in this courtroom. That isn't to affect your decision on either side, but don't let it be on one side and not on the other . . ."

This Janus-faced plea, looking in opposite directions at the same time, is an ancient oratorical device based, not on logic or good morals, but on the pragmatic virtue that it is often successful. We do not condone its use, but point out that appellants cannot complain of it now for they made

no objection at the time and did not ask the court to instruct the jury to disregard it.

As to the charge given to the jury, appellants make only one complaint, the refusal of a proposed instruction, reading as follows:

"In this case the defendant has pleaded that plaintiffs were guilty of contributory negligence which contributed proximately to their injuries. Contributory negligence is an affirmative defense and the burden of proving such contributory negligence is upon the defendant in this action."

The instruction is a correct statement of the law. Respondent's comment that "the burden of proving contributory negligence is on the defendant *only* where contributory negligence does not appear from the plaintiffs' own evidence" is incorrect. The burden of proof as to contributory negligence is on the defendant throughout the case, even though all evidence produced by both sides must be considered by the jury in determining this issue. The instruction should have been given. The question remains, however, whether the jury was misled by its refusal, and we must seek an answer in the whole record. On the *voir dire* examination of the jurors, the court told them that in his pleading the defendant had denied negligence on his part and had set up affirmative defenses as to the plaintiffs, alleging as to each of them that they were guilty of negligence which contributed to the accident. In the course of the instructions themselves, the jury was charged as follows:

"The defendant has denied any negligence on his part, and has alleged certain affirmative defenses. The burden of proving any such defenses by a preponderance of the evidence rests upon the defendant."

The words "affirmative defense" have a well-known meaning in accordance with the common usage of the English language. As is said in *Nichols* v. *Nelson*, 80 Cal.App. 590, 598 [252 P. 739]:

"The jury are presumed to possess ordinary intelligence and to understand the meaning and use of words in their common and ordinary application." (See also *Lawrence* v. *Pickwick Stages, Northern Div. Inc.*, 68 Cal.App. 494, 501 [229 P. 885].)

We conclude that the error in refusing the instruction was not so prejudicial as to require a reversal.

As there can be no appeal from an order denying a motion

for a new trial, the attempted appeal must be dismissed. (*Estate of Dopkins,* 34 Cal.2d 568, 569 [212 P.2d 886].)

The judgment is affirmed and the appeal from the order denying the motion for a new trial is dismissed.

Barnard, P. J., and Griffin, J., concurred.