[Civ. No. 1110. Fifth Dist. Mar. 27, 1970.]

GORDON J. GOTCHER et al., Plaintiffs and Appellants, v. CURTIS E. METCALF, Defendant and Appellant.

## COUNSEL .

Adon V. Panattoni for Plaintiffs and Appellants.

Hardin, Fletcher, Cook & Hayes and Cyril Viadro for Defendant and Appellant.

## OPINION

**COAKLEY, J.**—Helen L. Gotcher was killed in a mid-air collision between a single-engine Piper Comanche and a single-engine Beechcraft Debonair. The jury returned a verdict for the defendant, and judgment was entered accordingly. Plaintiffs moved for a new trial upon numerous grounds. The motion was granted on the ground of "irregularity in the proceedings of the adverse party as shown in the record." (Code Civ. Proc.,

§ 657, subd. 1.) The reason given was that the defendant's counsel "without prior consultation and/or approval of the court, read certain proposed and improper instructions to the jury, . . . and in an improper manner urged the jury to consider the correlative rights and duties of defendant and the pilot of the airplane in which decedent Helen Gotcher was riding, the cumulative and net effect of which was misconduct, having prejudicial effect upon the verdict. . . ." The defendant appeals from this order. Plaintiffs cross-appeal from the judgment contending that the court erred in refusing to instruct on the doctrine of res ipsa loquitur as requested by the plaintiffs.

We first consider the alleged misconduct of defendant's counsel on which the new trial was predicated.

In his argument to the jury, counsel read certain instructions which he advised the jurors he believed the court would give them. Counsel for the plaintiffs objected, and his objection was overruled. Defense counsel next discussed the doctrines of negligence and ordinary care in relation to the evidence, paraphrasing but not reading directly from the instructions which the court later gave. He then told the jurors that they would "also be instructed that the Federal Aviation Regulation Right-of-Way Rules, which were in effect at the time, read as follows. . . ." Counsel thereupon read a section of the General Operating and Flight Rules of the Federal Aviation Regulations dealing with right of way, and the converging and overtaking of planes in flight, following which he commenced to discuss the applicability of the regulation he had read to the evidence. At that point, the court declared the noon recess. Outside the presence of the jury there was a long colloquy initiated by the court concerning the court's uncertainty as to particular instructions which had been proposed, and the propriety of defense counsel arguing to the jury the alleged negligence of the deceased pilot, since plaintiffs' decedent could not be charged with such negligence. On the day preceding the commencement of oral argument, i.e., May 1, 1967, a conference on proposed instructions had been held between court and counsel. The record of that conference, if one was made, is not before us. However, from the reporter's transcript of what transpired on May 2, it is apparent that when the conference on instructions was adjourned on May 1, counsel for both parties were under the impression that all questions concerning disputed instructions had been resolved by the court, and that an instruction or instructions on Federal Aviation Regulations on right of way and related subjects would be given, albeit that counsel for plaintiffs was opposed to the giving of the instruction later read to the jury by defense counsel. The next morning, May 2, 1967, a brief conference was held in chambers. The only subject of that conference was the use of the Present Value of the Dollar Table (BAJI

1967 Supp. p. 146). Counsel for plaintiffs then made his opening statement, followed by defense counsel, whose argument was interrupted by the noon recess and for further conference on instructions which was called on the court's initiative following the recess. From the long colloquy that took place at that conference, it is clear (1) that the court was most uncertain as to what instructions, if any, should be given on Federal Aviation Regulations, (2) that both counsel believed that the court had decided on May 1 to give one or more instructions on said regulations, and (3) that respective counsel again urged the court to give the instructions which he offered and to reject those offered by opposing counsel with reference to Federal Aviation Regulations.

Unfortunately, the court had failed to inform counsel at either of the conferences which immediately preceded oral argument (afternoon of May 1 and morning of May 2) that there was any uncertainty as to which of the disputed instructions the court proposed to give, refuse, or modify. Instead, the court directed counsel to proceed with oral argument. The confusion, therefore, was caused by the court rather than by counsel. ■ Having conferred with counsel on proposed instructions, it was the duty of the court to delay the argument until its own uncertainty was resolved and counsel advised accordingly. That is the purpose of Code of Civil Procedure section 607a, which provides in part that: "Before the commencement of the argument, the court, on request of counsel, must: (1) decide whether to give, refuse, or modify the proposed instructions; (2) decide which instructions shall be given in addition to those proposed, if any; and (3) advise counsel of all instructions to be given."

■ It is axiomatic that it is the function of the court, not counsel, to instruct the jurors as to the law of the case. However, it is the right of counsel, and therefore not misconduct, to discuss the law of the case in his oral argument, provided, of course, that his statement of the law is correct and is not at variance with instructions on the law which the court has advised counsel it will give. (See *Hodges* v. *Severns,* 201 Cal.App.2d 99, 114 [20 Cal.Rptr. 129].)

■ Assuming, *arguendo,* that defense counsel was guilty of the misconduct charged, we hold, notwithstanding, that such misconduct was not grounds for granting a new trial for these reasons:

(1) When the court reconvened following the second conference on May 2, it explained to the jurors that it was the court's responsibility to instruct them as to the law, that it does so after conferring with counsel, that it did not believe it would give them a particular instruction or two to which counsel for the defendant had referred, and that the jurors were

to take their instructions from the court. We believe that this admonition cured any possible prejudicial error and that, in accordance with article VI, section 13, of the California Constitution, the judgment should not be set aside.

(2) There was no motion for a mistrial at any time by counsel for the plaintiffs, in the apparent belief that defense counsel's conduct, if error, was not prejudicial or that the court's admonition cured the prejudice. By failing to make a timely motion for a mistrial, the alleged misconduct was waived. (*Hansen* v. *Warco Steel Corp.*, 237 Cal.App.2d 870, 878 [47 Cal.Rptr. 428, 48 Cal.Rptr. 164].)

■ We next consider the plaintiffs' cross-appeal predicated upon the court's failure to give a conditional res ipsa loquitur instruction as requested by the plaintiffs.

The fatal mid-air collision between the two airplanes occurred on January 1, 1965, at approximately 12:30 p.m. over Folsom Lake at an altitude of 2,500 to 3,000 feet. The visibility was excellent, and both pilots were experienced, with many hours of flying in both single and multiple engine aircraft. At the time of the collision, the two planes, each on pleasure and sightseeing flights, had been in the air only a few minutes. As a result of the collision, the Comanche lost two or three yards of its right wing and plunged into the lake and was never recovered. The right half of the horizontal part of the tail of the Debonair was parted by the impact, but the plane managed to return to the Sacramento airport.

At the trial, defendant, the pilot of the Debonair, said he did not see the Comanche before the accident; that it was his practice to look all around and that he always scanned the horizon, left, right and forward, under visual flight rules conditions. There was testimony that the defendant was pointing out the scenery and other points of interest to his two passengers shortly before the collision. Edward Johnson, a correctional officer at nearby Folsom Prison, testified that he was on tower duty when the two airplanes passed over the prison at approximately the same altitude and the same rate of speed. The airplanes were flying in the same general direction, with the Comanche in the lead by about 400 feet and to the Debonair's left by about 300 feet, and they seemed to be going on a trip together. Johnson said that after passing Folsom Prison the Comanche commenced a gradual turn to the right and had completed a half circle when the planes collided. Robert Stafford, who was 14 years old at the time of the accident, testified that he was less than a mile from the dam when he heard airplane engines, looked up and saw the Comanche coming down. He said it was in a fast spin, slowed into a very slow spin, and fell into the lake.

Under the facts, the trial court correctly declined to instruct on the doctrine of res ipsa loquitur.

■ Application of the doctrine of res ipsa loquitur traditionally requires the presence of three elements or conditions. They are: (1) the accident must be of a type which ordinarily does not happen unless someone is negligent; (2) the accident must not be due to any voluntary act on the part of the plaintiff; and (3) the accident must be caused by an agency or instrumentality under the exclusive control of the defendant. (Witkin, Cal. Evidence (2d ed. 1966) § 260, p. 222; Prosser on Torts (3d ed.) p. 218; *Ybarra* v. *Spangard,* 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258]; *Cordova* v. *Ford,* 246 Cal.App.2d 180, 184 [54 Cal. Rptr. 508].) Clearly, the first two conditions are present in this case. Equally clear is the fact that the third condition is absent. Two moving planes, not one, were involved in this mid-air collision.

We recognize that the doctrine has been extended since that day in 1863 when a barrel rolled out of the window of an English warehouse onto a passing pedestrian and became the occasion for the first use and application of the magic words "res ipsa loquitur." (*Byrne* v. *Boadle,* 159 Eng. Reprint 299.)[1] Our case is not within any of the recognized extensions of the doctrine.

■ We point out further that a res ipsa loquitur instruction is properly refused unless the evidence supports a preliminary determination by the court that "in the light of past experience" (1) the accident was of the type which ordinarily does not happen unless someone was negligent, and (2) it is more likely than not that the accident was caused by the defendant's negligence. (*Faulk* v. *Soberanes,* 56 Cal.2d 466, 470 [14 Cal.Rptr. 545, 363 P.2d 593]; *Zentz* v. *Coca Cola Bottling Co.,* 39 Cal.2d 436, 443 [247 P.2d 344]; *La Porte* v. *Houston,* 33 Cal.2d 167, 169 [199 P.2d 665]; *Cordova* v. *Ford, supra,* 246 Cal.App.2d 180.) Where it is equally probable that the negligence was that of someone other than the defendant the doctrine does not apply (see *Faulk, supra,* p. 470; *Zentz, supra,* p. 443; and *La Porte, supra,* p. 169).

---

[1]For examples of cases in which the doctrine has been extended see: In the common carrier-passenger type of case, *Hardin* v. *San Jose City Lines, Inc.,* 41 Cal.2d 432 [260 P.2d 63]; *Sinan* v. *Atchison, Topeka & Santa Fe R. Co.,* 103 Cal.App. 703 [284 P. 1041]; *Smith* v. *O'Donnell,* 215 Cal. 714 [12 P.2d 933]; in certain types of malpractice actions, *Seneris* v. *Haas,* 45 Cal.2d 811 [291 P.2d 915, 53 A.L.R.2d 124]; and the typical rearend collision, *Ponce* v. *Black,* 224 Cal.App.2d 159 [36 Cal. Rptr. 419]; and see examples in Witkin, Cal. Evidence (2d ed. 1966) p. 233 et seq.

*Smith* v. *O'Donnel, ibid.,* involved a mid-air collision of two planes. The doctrine of res ipsa loquitur was held to be applicable in favor of a passenger against the owner of the plane in which the passenger was riding, the owner being found to be a common carrier. The owner of the Comanche is not a party to this action.

■ We do not believe that it can reasonably be said that the evidence in this case establishes that *it is more probable than not* that the defendant was negligent, and that his negligence caused or contributed to the accident. Johnson testified that he saw the Comanche circle in the direction of the Debonair from a distance of 300 feet to the latter's left and from 400 feet ahead of it. At even the minimum speed necessary to maintain the two planes in flight, it cannot be said that the defendant could have avoided striking the Comanche, assuming he saw it. If Johnson's testimony was correct, it cannot be said that it is more likely than not that the accident was caused by defendant's negligence or that the defendant could have avoided the accident. On the other hand, the physical evidence in this case establishes that only the tail assembly and rear portion of the defendant's plane were damaged. The record is silent as to damage to the nose or forward portion of the plane. This could indicate that the Comanche was not ahead of the Debonair and in plain sight thereof; rather, that the Comanche struck the defendant's plane from the rear or from the side. This interpretation of the physical evidence is supported by the testimony of the defendant and his passengers that, though looking ahead, down and about them, they did not see the Comanche. Under this view of the evidence, as under Johnson's testimony, it cannot reasonably be said that *it is more probable than not* that the accident was caused by the defendant's negligence or that he could have avoided it.

■ In *Cordova* v. *Ford, supra,* 246 Cal.App.2d 180, it was held that the trial court did not err in refusing to give the same conditional res ipsa loquitur instruction refused in our case. Two moving vehicles were involved in the accident in *Cordova.* Reviewing the California cases and citing Prosser on Torts (3d ed.) at length, the court held that (1) the plaintiff had not brought the case within any of the recognized exceptions to that part of the doctrine which requires, before it may be applied, that it must be shown that the accident was caused by an instrumentality under the exclusive control of the defendant, and (2) the plaintiff failed to produce evidence permitting the conclusion that it was more likely than not that the defendant was responsible for the accident.

In the leading case of *Zentz* v. *Coca Cola Bottling Co., supra,* 39 Cal.2d 436, 444, the court said: "Of course, it must appear that the defendant had sufficient control or connection with the accident that it can be said that he was more probably than not the person responsible for plaintiff's injury." And " . . . it has been held that res ipsa loquitur will not apply if it is equally probable that the negligence was that of someone other than the defendant." (P. 443, citing several California cases to that effect.)

*Faulk* v. *Soberanes, supra,* 56 Cal.2d 466, involved two moving vehi-

cles. There, Chief Justice Gibson, speaking for a unanimous court, held that the trial court correctly refused to instruct on res ipsa loquitur, stating that: "Even if we assume that the doctrine of res ipsa loquitur might be used in some cases to require an explanation from both drivers with respect to accidents involving two moving vehicles, defendant would be placed at a serious disadvantage were she required to exculpate herself in order to avoid liability when the other driver, who may have been equally or solely negligent, is not before the court. (Cf. *Phillips* v. *Noble,* 50 Cal.2d 163, 167 [323 P.2d 385].)

". . . To avoid the application of the doctrine of res ipsa loquitur defendant was not required to show that the accident was not caused by negligence on her part; the doctrine, as we have seen, was not applicable if the jury found that there was no greater probability that the accident was due to her driving than to the conduct of another driver."

In our case, as in *Faulk,* "the other driver [pilot], who may have been equally or solely negligent, is not before the court."

As our final reason for holding that it was not error to decline to instruct on the doctrine of res ipsa loquitur, we observe that the jury was fully instructed on the general law of negligence. Sixteen such instructions were given, including instructions on negligence; on ordinary care; that the negligence, if any, of the pilot of the Comanche is not chargeable to plaintiffs' decedent; on proximate cause, including concurrent causes and liability therefore when the negligence of two or more persons contributes concurrently to the accident and without regard to the relative degree of their contribution; on looking and seeing; and two instructions with reference to Federal Aviation Regulations requested by plaintiffs.

In our opinion, these instructions provided ample guidance for the jury, and ample room to find, had they so interpreted the evidence, that the defendant was negligent, that his negligence was at least a concurring cause of the accident, and that he was, therefore, liable to the plaintiffs. Accordingly, the mandate of article VI, section 13, of the California Constitution is applicable. "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

The order granting a new trial is reversed. The judgment is affirmed.

**STONE, P. J.**—Although I concur in the holding that the trial court properly refused to give instructions on res ipsa loquitur, I am not impelled to reach this conclusion because two airplanes and two pilots were involved.

The rules governing res ipsa loquitur are not fixed by statute; rather, the doctrine and the rules governing its applicability are the products of judicial decision. Although the rules have been modified from time to time to meet differing factual situations, the matrix for the rules of applicability has always been the unfairness in requiring proof of specific acts of negligence by an innocent person injured through the negligence of others where he had no knowledge of the manner in which his injuries were caused. The passerby in *Byrne* v. *Boadle,* 2 H. & C. 722, 159 Eng. Reprint 299, who was struck by a barrel of flour, was not aware of what hit him, or why, or how. Although the English judge, whose proficiency in Latin matched his perspicacity, said it was a plain case of "res ipsa loquitur," the courts and legal scholars ever since have' been trying to explain in English the import of that profound observation.

Logically, it would seem that an innocent person injured in an accident that does not ordinarily happen unless someone is negligent might be as much in the dark about how he was injured, and as much entitled to the benefit of the doctrine of res ipsa loquitur as was the passerby struck by the falling barrel of flour, even though his accident resulted from the concurring acts of more than one person, each acting independently.

However, I agree that res ipsa loquitur is not applicable here because the liability of both pilots was not at issue in the trial, that is, plaintiffs went to trial against only one participant in the accident. To apply res ipsa loquitur piecemeal in cases of concurring causation seems to me to place an unfair burden on the one party who is brought to trial.

On another point, I think the fact the jury was fully instructed according to the standard rules of negligence, is irrelevant to the question whether res ipsa loquitur is applicable. (*Di Mare* v. *Cresci,* 58 Cal.2d 292, 299 [23 Cal.Rptr. 772, 373 P.2d 860].)

**GARGANO, J.**—I dissent. I agree with the majority's conclusion that there is nothing in the record to support a charge of misconduct against defendant's trial counsel or to warrant the granting of a new trial on this ground. As the main opinion points out, when Mr. DiResta (defendant's counsel) commenced his argument to the jury, the trial judge had not yet decided whether to give or reject the proffered "right-of-way" instruction. Thus, he invited the problem by initially overruling Mr. Panattoni's (plaintiffs' counsel) objection to the reading of instructions even though properly he could have insisted that counsel not undertake to tell the jury what he, the judge, was going to say (*Hodges* v. *Severns,* 201 Cal.App.2d 99, 114 [20 Cal.Rptr. 129]). Moreover, Mr. DiResta had reasonable cause to assume that his proffered instruction was going to be given. Mr. Panattoni objected because the Federal Regulation recited in the instruction states

that "when aircraft of the same category are converging at approximately the same altitude, except head-on or nearly so, the aircraft to the other's right has the right of way." However, the verb "converge" means to "move toward a single point" or to "come together." (Webster's Third New Internat. Unabr. Dict.) In addition, Johnson testified that the Comanche was flying to the Debonair's left, made a right turn and collided with the Debonair after completing a half circle, and an expert testified that this meant the airplanes were converging when they collided.[1]

It is settled that the right to discuss the merits of the cause both as to the law and facts is "unabridged." (*People* v. *Molina,* 126 Cal. 505, 508 [59 P. 34].) Therefore, " 'counsel may in his argument, state what the law is . . . provided of course the statement of what he considers the law to be is correct.' " (*De Armas* v. *Dickerman,* 108 Cal.App.2d 548, 553 [239 P.2d 65].) But, because the term "misconduct" implies a dishonest act or "an attempt to persuade the court or jury by the use of deceptive or reprehensible methods" (*People* v. *Baker,* 207 Cal.App.2d 717, 724 [24 Cal.Rptr. 691]), an erroneous statement as to the law is not misconduct unless it is done in bad faith and "[a] lawyer is not guilty of misconduct merely because he is wrong as to the law." (*Davis* v. *Franson,* 141 Cal.App.2d 263, 271 [296 P.2d 600]; *Martinez* v. *Moore,* 221 Cal.App.2d 516 [34 Cal.Rptr. 606].) When all of the circumstances are considered, it cannot be said that Mr. DiResta was guilty of deceptive or reprehensible conduct. Although it is the better practice for trial lawyers to secure the approval of the court before expounding questionable points of law to the jury, Di Resta's conduct in this case, albeit not commendable, is understandable.

Nevertheless, I would affirm the order granting a new trial on the ground that the court erred when it failed to give plaintiffs' proffered instruction on "conditional res ipsa loquitur." It is the rule that the refusal to give a pertinent instruction is an error of law within subdivision 7 of Code of Civil Procedure section 657 (*Gonsalves* v. *Petaluma Bldg. Materials Co.,* 181 Cal.App.2d 320 [5 Cal.Rptr. 332]). It is also the rule that an order granting a new trial must be affirmed on appeal if it should have been granted on any ground stated in the motion, except insufficiency of

---

[1]The reason given by the trial judge for rejecting the proffered instructions is unsound. While the negligence of the pilot of the Comanche was not relevant, defendant was entitled to prove that he had the right of way on the issue of his own negligence, if this were the case. Nevertheless, we do not hold that the proffered right of way instructions should have been given by the trial court. The term "converge" may have a technical or specialized meaning when applied to air traffic with which we are not familiar. While the expert opined that the airplanes were converging, he did not make it clear that he meant converging within the ambit of the Federal Regulation.

the evidence or excessive or inadequate damages (*Treber* v. *Superior Court,* 68 Cal.2d 128 [65 Cal.Rptr. 330, 436 P.2d 330]).

Clearly, at least two of the three conditions declared essential in *Ybarra* v. *Spangard,* 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258], for the application of the doctrine of res ipsa loquitur were established by plaintiffs' evidence. First, the mid-air collision was not due to any voluntary action or contribution on the part of the decedent, Helen L. Gotcher. She was a passenger in the airplane of a friend who had taken her on a pleasure trip. Second, the accident was of a kind which does not ordinarily occur in the absence of someone's negligence; the collision was between two airplanes which had been flying over a large lake, in the same general direction, at about the same altitude and at a time when the visibility was excellent.[2] It is never enough, however, for a plaintiff to prove merely that an accident was caused by the negligence of someone unidentified because he must also prove that it is more probable than not that the accident was caused by the negligence of the defendant. *Ecco* the third condition! The evidence must show that the accident was caused by an agency or instrumentality within the exclusive control of the defendant. Therefore, the crucial question is whether plaintiffs' evidence established the existence of this third requirement, bearing in mind that "[t]he existence of the conditions upon which the operation of the doctrine is to be predicated is a question of fact and the right of the jury to find those facts must be carefully preserved." (*Seneris* v. *Haas,* 45 Cal.2d 811, 827 [291 P.2d 915, 53 A.L.R.2d 124].)

Admittedly, the early decisions pursued the view that the doctrine of res ipsa loquitur did not apply to an accident involving two or more moving vehicles because the defendant was only in control of one of them (*Keller* v. *Cushman,* 104 Cal.App. 186 [285 P. 399]; *Rosenbaum* v. *First Doe Luce,* 96 Cal.App. 149 [273 P. 862]). Nevertheless, I take issue with this absonant proposition. If the plaintiffs' evidence clearly demonstrates that the accident was of a kind which ordinarily does not occur in the absence of someone's negligence and, further, that it is more probable than not that it was caused in whole or in part by an instrumentality over which the defendant had the exclusive control, then why should the injured party be penalized by the fortuitous circumstance that someone else's negligence may also have been a contributing factor. As Dean Prosser puts it, "[i]f the driver collides with a stationary object, an inference of negligence arises; why any other conclusion when he collides with

---

[2]As an expert testified, in speculating on the cause of an accident such as the one in question, "someone obviously isn't looking."

a moving object which proper care requires him to look out for and avoid?" (Prosser, Law of Torts (3d ed.), p. 227.)

I believe that the answer to Dean Prosser's question is self-evident and that the decisional law of this state is moving slowly but inextricably in this direction. For example, an exception to the early belief that the doctrine of res ipsa loquitur was inapplicable to a collision between two or more vehicles was first recognized in cases involving common carriers on the theory that they undertake a special responsibility for their passengers' safety (*Holt* v. *Yellow Cab Co.,* 124 Cal.App. 385 [12 P.2d 472]; *Formosa* v. *Yellow Cab Co.,* 31 Cal.App.2d 77 [87 P.2d 716]; *Dieterle* v. *Yellow Cab Co.,* 34 Cal.App.2d 97, 100 [93 P.2d 171]; *Stark* v. *Yellow Cab Co.,* 90 Cal.App.2d 217 [202 P.2d 802]). And, in the leading case of *Ybarra* v. *Spangard, supra,* 25 Cal.2d 486, the California Supreme Court, in an enlightened opinion, departed from the single instrumentality requirement as to a patient who had suffered a traumatic injury to his shoulder during an appendectomy operation. In that case, the court, obviously influenced by the fact that the defendants had undertaken a special responsibility for the plaintiff's safety and had the superior knowledge as to how the injury occurred, held that the plaintiff could avail himself of the doctrine of res ipsa loquitur against all doctors and hospital employees connected with the operation, although the evidence indicated that not all all of them could have been responsible.[3] A few years later the court in *Zentz* v. *Coca Cola Bottling Co.,* 39 Cal.2d 436, 443-444 [247 P.2d 344], used this significant language (which the main opinion apparently ignores): "The requirement of control is not an absolute one. Although, as we have seen, the doctrine will not ordinarily apply if it is equally probable that the negligence was that of someone other than the defendant, the plaintiff need not exclude all other persons who might possibly have been responsible where the defendant's negligence appears to be the more probable explanation of the accident."

And, finally, even in the relatively recent decision of *Cordova* v. *Ford,* 246 Cal.App.2d 180, 186 [54 Cal.Rptr. 508], relied upon in the main opinion, the appellate court, while holding that the doctrine *normally* does not apply to a collision between two vehicles, nevertheless had this to say: "To invoke the doctrine it was incumbent upon plaintiff to produce evidence permitting the conclusion that it was more likely than not that defendant was responsible for the accident."

---

[3] At page 490 of the opinion, the court stated: " '. . . the particular force and justice of the rule, regarded as a presumption throwing upon the party charged the duty of producing evidence, consists in the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to him but inaccessible to the injured person.' "

I would adhere to the proposition that "the exclusive control" condition of res ipsa loquitur is met as to a collision involving two or more vehicles if the defendant was in exclusive control of one of the vehicles, if the evidence warrants a finding by the jury that it is more probable than not that the collision could have been avoided regardless of the fault of the other driver had defendant been exercising the degree of care required of him, and if the evidence as to why defendant failed to do so is "practically accessible" to him and inaccessible to the injured person.

I believe that plaintiffs' evidence meets this test; it allows the conclusion to be drawn that even if it is assumed that the mid-air collision between the Comanche and the Deboniar was precipitated by the negligence of the deceased pilot, it is more probable than not that it could have been avoided by defendant if he had been exercising the degree of care required of an experienced pilot who had undertaken the responsibility of flying passngers for hire. An expert testified that the minimum separation which should be maintained, for safety purposes, between flying airplanes of the type involved in the collision, is 1,000 feet. Yet, according to the witness Johnson, when the two airplanes passed over Folsom Prison they were flying at approximately the same speed and altitude, with the Comanche in the lead by only 400 feet and to the left of the Debonair by only 300 feet. Defendant testified that he did not see the Comanche until after the collision, but the collision took place over a large scenic lake and in an area where the air traffic is such that the presence of other planes should have been suspected.[4] Moreover, if Johnson's testimony is to be believed, the other plane should have been in plain view and would have been seen if defendant had been looking; the visibility was excellent; the Comanche was painted red and white, and it was only a short distance ahead of the Debonair and slightly to the Debonair's left, the side on which the pilot was seated. Johnson said that the Comanche had completed a half circle when the planes collided. Arguably, defendant had ample time to take evasive action if he had not been pointing out the scenery and other points of interest to his passengers. In fact, the testimony of an expert, in answer to a hypothetical question, raises the inference that defendant did take some evasive action prior to the collision. This testimony in turn could indicate that defendant saw the Comanche shortly before the accident, contrary to his testimony, and that he was not explaining all of the circumstances of the accident.

The author of the main opinion apparently weighs and resolves conflicts in the evidence. He suggests, for example, that the Debonair was ahead of

---

[4]The lake is within proximity of the Sacramento airport, Phoenix Field, Fairoaks, and Mather Air Force Base.

the Comanche because only the Debonair's tail assembly and rear portion were damaged in the collision. But, Edward Johnson testified that when the airplanes passed over Folsom Prison the Comanche was in the lead by about 400 feet and to the Debonair's left by about 300 feet, and the Comanche commenced a gradual turn to the right and had completed a half circle when the planes collided. My colleague states that his hypothesis that the Debonair may have been in the lead is supported not only by the physical evidence relating to the damage of the Debonair, but also by the testimony of the defendant's passengers who were looking ahead, down and about them and did not see the Comanche. Mr. and Mrs. LeJeune were looking at the dam shortly before the accident occurred. It is basic that when an instruction on conditional res ipsa loquitur is given to the jury, it is up to the jury to weigh and resolve conflicts in the evidence in order to determine whether the doctrine is applicable.

The main opinion also relies on the dicta in *Faulk* v. *Soberanes*, 56 Cal.2d 466, 470 [14 Cal.Rptr. 545, 363 P.2d 593], and holds that in any event the doctrine of res ipsa loquitur is inapplicable in this case because the deceased pilot was not a defendant. It suggests that defendant would have been placed at a serious disadvantage had he been required to exculpate himself in order to avoid liability when the other pilot, who was equally or solely negligent, was not before the court.

The *Faulk* case is distinguishable. In that case, although the evidence showed that the accident was of a kind which does not ordinarily occur in the absence of someone's negligence, it also showed that it was equally probable that the negligence was that of the driver of another car who had not been named in the lawsuit. The court understandably stated that "defendant would be placed at a serious disadvantage were she required to exculpate herself in order to avoid liability when the other driver, who may have been equally or solely negligent is not before the court." In this case, the evidence does not merely show that the accident was of a kind which does not ordinarily occur in the absence of someone's negligence, and that it was equally probable that the negligence was that of the deceased pilot, but it also shows that notwithstanding the deceased pilot's negligence, it is more probable than not that the collision could have been avoided by defendant had he been using due care in the operation of his own airplane. Therefore, if the res ipsa loquitur instruction had been given, defendant could have exculpated himself by satisfactorily explaining his own conduct without regard to the conduct of the deceased pilot. And, because the evidence as to why he failed to avoid the accident under all of the circum-

stances we have mentioned is "practically accessible to him" but "inaccessible" to the plaintiffs, he would not have been placed at a disadvantage.

I would affirm the order granting a new trial.

A petition for a rehearing was denied April 24, 1970, and the petition of the plaintiffs and appellants for a hearing by the Supreme Court was denied May 21, 1970. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.